## HAMILTON W. HEWITT v. JOHN EISENBART.

FILED APRIL 26, 1893. No. 4922.

1. **Physicians and Surgeons:** MALPRACTICE: EXPERT WIT-
NESSES: HYPOTHETICAL QUESTIONS: REVIEW. A judgment
will not be set aside because an expert witness was permitted to
answer a hypothetical question assuming a fact unsupported by
the evidence, where such fact was the only hypothesis of the
question, not combined with others based upon evidence, and the
answer could not mislead the jury.

2. ———: ———: ———. It is not prejudicial error to permit an
expert to state what steps he would take in a given case if the
question does not refer to any matter in dispute but is merely
introductory in its character.

3. ———: ———: PHYSICAL CONDITION: DECLARATIONS OF A
PARTY to the suit, explanatory of his physicial condition at the
time the declarations are made, are admissible where the circum-
stances warrant the inference that they were made spontaneously
and not with a view to their effect upon the controversy.
Whether or not they fall within this rule must be left largely to
the discretion of the trial court.

4. ———: ———: ———: TESTIMONY as to the physical condition
of a plaintiff in a malpractice case just before the trial, and two
or more years after undergoing the treatment complained of,
is competent where such condition is shown to be the result
of the injury in question and is of a permanent nature.

5. ———: ———: TREATMENT: DEGREE OF SKILL. The law re-
quires of a surgeon in the treatment of his patient the exercise
of that degree of knowledge and skill ordinarily possessed by
members of the medical profession.

6. ———: ———: EXPERT WITNESSES: TESTIMONY. In a mal-
practice case it is not necessary to sustain a verdict for the
plaintiff, that all the expert witnesses called should consider
the treatment pursued by defendant improper; nor will the
fact that all such witnesses agree that a portion of such treat-
ment is proper under some circumstances, in itself defeat a
recovery.

7. ———: ———: EXPENSE OF EFFORTS TO CURE INJURY: RE-
COVERY. There can be no recovery for expense incurred in ef-
forts to cure an injury, unless it be shown that the expense
so incurred was reasonably necessary.

ERROR from the district court of Saline county. Tried below before MORRIS, J.

*F. I. Foss* and *Robert Ryan*, for plaintiff in error.

*J. D. Pope* and *Hastings & McGintie, contra.*

IRVINE, C.

This action was begun by defendant in error against plaintiff in error to recover damages on account of the alleged negligent and unskillful setting, dressing, and caring for a broken leg of defendant in error by plaintiff in error, a physician and surgeon. The answer admitted the treatment of the broken leg, but denied negligence and want of skill, and alleged that any injury sustained by defendant in error was due to his own negligence and disobedience of plaintiff in error's instructions. This the reply denied. A verdict was found and judgment rendered for defendant in error.

It appeared that defendant in error suffered an oblique fracture of both tibia and fibula at the junction of the middle and lower third of those bones. The accident occurred in the country at night, and plaintiff in error called the following morning. He reduced the fracture, having the assistance of defendant in error's son at least. There is some testimony that another person also assisted. He then placed the limb in splints made at the time from pieces of a light packing box. A posterior splint was used extending from about six or eight inches above the knee to below the heel. This was padded with cotton and wrapped with cloth. To this splint was attached at right angles a foot-board. Two lateral splints were used extending from below the knee to the ankle. Bandages were placed around all these splints, including one binding the foot to the foot-board. A space seems to have been left at the seat of fracture, whereby some local treatment was there-

after applied without removing the splints. The splints were not removed until about the third week after the injury. On the thirty-second day the splints were finally removed and plaster of Paris dressing applied, which was renewed once or twice thereafter. After the first plaster of Paris dressing was applied Eisenbart got crutches and moved about somewhat. The final result was the shortening of the leg about one inch and a half, caused by a displacement of the fragments of the bones, the lower pieces extending up alongside the upper and all four ends uniting laterally. This tendency towards shortening seems to have been first observed when the first plaster of Paris dressing was removed. When it was renewed a weight was attached, apparently to the lower part of the new dressing, by means of a cord and pulley. Upon all other points at all material to the case there is a marked conflict of evidence. A great deal of expert testimony was taken which, as seems to be usual in such cases, is bewilderingly inharmonious.

A great many exceptions were taken to the admission and rejection of testimony. We shall notice only those specifically referred to in the briefs, simply observing that the other exceptions are of minor importance and not well founded.

Dr. Beghtol, a witness for defendant in error, was asked: "Can a limb be extended in the kind of a fracture we speak of, and properly set, without the assistance of some other than the surgeon?" This was not founded upon any evidence in the case, all the witnesses agreeing that Dr. Hewitt had *some* assistance. If this element had been interjected in a question containing any other elements founded upon the evidence, the overruling of an objection thereto would certainly be prejudicial error. We cannot see, however, how, standing alone, its answer could prejudice plaintiff in error. If an element not within the evidence be combined with others supported by evidence, an

answer to the question might be founded in part or entirely upon the hypothesis improperly assumed, and be referred by the jury to the proper hypothesis. But where the improper hypothesis stands alone, no such result can follow. The objection should have been sustained, but the error was without prejudice. Similar questions were put to the other witnesses without objection.

Dr. Beghtol was also asked in effect what would be the result of a proper reduction and improper dressing of such a fracture, and complaint is made of the admission of his answer, on the ground that it assumed facts not proven. There is testimony in the record tending to show an improper dressing, and the overruling of the objection was right.

Dr. Watson was asked, "What would be your first steps in a fracture of that character, if it was at the juncture of the lower and middle third of the tibia and fibula, or both bones of the leg?" Other similar questions were put, but called forth no answer except in accordance with the steps actually taken by Dr. Hewitt.

These questions were introductory, and when the witnesses were called upon for a professional opinion upon the case, the form of the interrogatory was changed so as to call for a description of "what would be proper" treatment. What course a particular surgeon would take would not be competent evidence upon an issue in the case, but such questions, when purely of a preliminary character and not calling forth evidence upon contested points, are not prejudicially erroneous.

A witness, called to show the extent of Eisenbart's injuries, testified that he employed Eisenbart to work for him and directed him to do some spading; that Eisenbart failed to make proper progress with this work, and on witness asking him the reason, Eisenbart explained that his inability to use the spade was due to the then condition of his leg. The admission of this declaration is assigned as error.

There can be no doubt that the declarations of a party as
to a past occurrence would be inadmissible, unless in the
nature of admissions, but here the question under investiga-
tion was the physical condition of the plaintiff at the time
the declarations were made. Statements made to physicians
called upon for treatment have been held admissible even
when they referred to past occurrences, and declarations to
others are admissible when confined to present feelings or
conditions. They may of course in some cases be simulated,
but they must from necessity be admitted in evidence, es-
pecially where, as in this case, there are no grounds shown
for believing they were made for an ulterior purpose. The
trial court must be permitted to exercise its discretion, very
largely, in determining whether the declarations were made
under such circumstances as to permit the inference that
they were genuine expressions, and the jury must be left to
determine whether or not such inference shall be drawn.
(Greenleaf, Ev., 102; *Carthage Turnpike Co. v. Andrews,*
102 Ind., 138; *Cleveland, C., C. & I. R. Co. v. Newell,*
104 Id., 264; *Blair v. Madison County,* 46 N. W. Rep.
[Ia.], 1093; *Eckles v. Bates,* 26 Ala., 655; *Howe v. Plain-
field,* 41 N. H., 135; *Towle v. Blake,* 48 Id., 92; *Kennard
v. Burton,* 25 Me., 39; *Elliott v. Van Buren,* 33 Mich., 49.)

Complaint is made in a general manner of the court's
allowing the general result of the injury to be shown in-
stead of confining the proof to the excess of injury and
suffering beyond that necessarily entailed by such an acci-
dent. There was evidence as to the extent of shortening
ordinarily to be expected in such cases, and as to the length
of time usually occupied in the healing process. In such
cases the exact *quantum* of damages is not susceptible of
direct and exact proof, but must be left for the jury to
admeasure under appropriate instructions. By an instruc-
tion correct in its terms and not excepted to by plaintiff in
error the jury was limited in admeasuring damages to the
pain, suffering, and injury caused by the negligence of

plaintiff in error.   It is also contended that testimony of surgeons as to the condition of Eisenbart's leg shortly before the trial was improperly admitted.   This testimony relates to the length and shape of the leg, and it was shown that this condition was due to the position in which the bones had united after the fracture.   The condition of the leg at the trial was thus clearly connected with the injury and the testimony was properly admitted.

It is urged that the eighth instruction was misleading as to the *onus probandi.*   The giving of this instruction was not objected to in the motion for a new trial, nor is it assigned as error.   Errors in the giving of instructions will not be considered unless specifically assigned.   This has been repeatedly decided.   (*Russel v. Rosenbaum*, 24 Neb., 769.)

The errors specifically assigned in the giving and refusing of instructions relate only to those requested by the parties.   The transcript of the record fails to group the instructions in such a manner as to distinguish very clearly those given by the court of its own motion and those requested by the parties.   Objection is made to the giving of those numbered 1, 2, and 3, asked by defendant in error. Numbers 2 and 3 appear from the record to have been *refused.*   Number 1 is as follows: "When a surgeon undertakes a case of a fracture or broken limb the implied contract on his part is that he possesses the ordinary skill and ability in his profession, and that he will use that skill and ability with diligence in and about the cure of his patients such as surgeons ordinarily employ."   While the language of this instruction is not so well chosen as might be desired, it fairly states the rule governing such cases and is not erroneous.

The refusal to give a number of instructions asked by plaintiff in error is assigned as error.   The law is for the most part stated correctly in these instructions, but the points covered were all substantially embraced in the in-

structions given by the court of its own motion. There was no error in refusing them.

It is urged that the evidence is not sufficient to sustain the verdict. It is not contended that Dr. Hewitt's treatment of the injury, as enlightened by the testimony of *some* of the experts, would not amount to negligence, but the point urged seems to be that the experts disagreeing among themselves, and all of them indorsing a *portion* of the treatment pursued as proper *under some circumstances*, it cannot be said that Dr. Hewitt failed to exercise that degree of skill *ordinarily* possessed and exercised by members of his profession. In other words, that if in such cases the testimony shows that some surgeons consider the treatment adopted as proper, there can be no recovery. The adoption of this view would be to change the rule of liability so as to hold a surgeon responsible only when his acts evidence a want of skill below that of the most unskillful surgeon whom the defendant might be able to produce. The jury must judge of the skill and qualifications of the expert witnesses as well as of the defendant in the action, and it is for the jury to say upon all the evidence what treatment amounted to negligence under the rule of skill required.

Only one other question remains for consideration. The petition alleges, in laying the damages, that by reason of the wrong complained of defendant in error had *unnecessarily* incurred great expense in endeavoring to be cured of the defect. This was undoubtedly a clerical error in drawing the petition, and did the evidence sustain any claim for damages of that character an amendment might at this time be permitted. (*Homan v. Steele*, 18 Neb., 652.) The only testimony upon this point is as follows:

Q. Were you at any expense for medicine and treatment?

A. Only a doctor's bill.

Q. How much was that?

Objected to, as immaterial and irrelevant.    Overruled and defense excepts.

A.  About $85.

There is nothing to show when or how this expense was incurred, whether it was due to injuries produced by defendant's negligence, whether the expense was necessary or the amount of the bill reasonable.   No recovery could be based on such evidence, and as it was probably considered by the jury in estimating the amount of damages sustained, the case should be reversed and remanded, unless within thirty days defendant in error file a remittitur to the amount of $85 and interest at seven per cent from the date of the judgment.   Should this be done the judgment will be affirmed.

JUDGMENT ACCORDINGLY.

RAGAN, C., concurs.

RYAN, C., took no part in the decision.