JOHN C. GRISWOLD V. WILLIAM F. HUTCHINSON ET AL.

FILED APRIL 7, 1896.    No. 6449.

**Physicians and Surgeons: MALPRACTICE.** The law does not exact from physicians and surgeons the utmost degree of care, or the highest attainable skill in the practice of

their profession, although they, by virtue of their relation toward patients, impliedly engage that they possess ordinary knowledge and skill, and that they will, in the course of their employment, exercise such proper care and attention as may be reasonably expected from members of their profession. (*Hewitt v. Eisenbart*, 36 Neb.,· 794.)

ERROR from the district court of Madison county.   Tried below before ALLEN, J.

*Campbell & Wallis, H. C. Brome,* and *Clarke Gapin,* for plaintiff in error.

*John S. Robinson* and *W. E. Reed, contra.*

POST, C. J.

On the trial of this cause in the district court for Madison county judgment was entered in favor of the defendants therein upon a verdict rendered in accordance with the peremptory instruction of the court, and which it is sought to reverse by means of this proceeding.

According to the allegations of the petition below the plaintiff therein employed the defendants, who are practicing physicians and surgeons, to treat his (plaintiff's) wife for an ailment pronounced by said defendants to be an ovarian tumor; that acting upon the advice of the defendants he accompanied his said wife from his home in Madison county to the city of Omaha, where, after an examination of her person, they (defendants) advised an operation for the removal of said supposed tumor; that relying upon the knowledge and skill of defendants, and believing that they had made a careful and proper examination of the person of his wife, and believing such operation to be necessary in order to save her life, he entered

into a contract whereby he agreed to pay therefor the sum of $200; that the defendants thereupon proceeded in the absence of the plaintiff to perform said operation by making an incision in his wife's abdomen, and advising him and his said wife that such operation had been entirely successful and that they had removed from the person of the latter an ovarian tumor of large size, whereupon he paid to the defendants the sum of $200, the agreed price for their services in that behalf; that he paid out and expended in caring for his wife in consequence of said operation the sum of $79; and that his own time thus necessarily employed is of the value of $40. He alleges further that subsequent to the payment of the defendants' bill he learned that his wife was not suffering from an ovarian tumor, and that the defendants had not removed from her person a tumor of any kind, but that her only ailment was a fibroid tumor of the uterus, which fact, although discovered by the defendants upon the opening of her abdomen, was by them fraudulently concealed from him until about the time of the commencement of this action; that if the examination of his wife's person had been conducted with reasonable care and skill the nature and extent of her ailment would have been disclosed, but that such examination was carelessly, negligently, and improperly made by the defendants, and that in consequence of such wrongful and negligent acts his wife has been permanently injured in health, to his damage in the loss of her service, etc. The defendants answered separately, Doctor Hutchinson admitting that he is a practicing physician and surgeon residing in Madison county; that Elizabeth Griswold, mentioned in the petition, is

the wife of the plaintiff, and denying the other allegations thereof. Doctor Foote, after an admission in substantially the same language as that employed by his co-defendant, admits the performance of an operation upon the person of the plaintiff's wife, and the receipt therefor of the sum of $200 as alleged, but denies the charge of negligence, and alleges that said operation "was skillfully performed, and that the same was necessary to a correct understanding of the ailment from which the said Elizabeth Griswold was suffering." The plaintiff, by way of reply, denied the allegations of new matter in the respective answers.

One proposition clearly established by the record is that the defendants were mistaken respecting the cause of Mrs. Griswold's affliction, which, according to their diagnosis, was an ovarian tumor, but which was, as alleged, during the operation mentioned discovered to be a fibroid tumor of the uterus. The evidence bearing directly upon that subject was given by Dr. Sprague, who, by invitation of defendants, witnessed the operation, and who testified, in substance, that no tumor was removed from the person of the patient; also, by Mrs. Brown, proprietress of the hospital in the city of Omaha to which Mrs. Griswold had been taken for the purpose of the operation, who testified to a conversation with Dr. Foote shortly thereafter, in which the latter remarked that the only tumors discovered during the operation were immovable fibroid tumors of the uterus, and in which conversation he requested the witness to make no statement concerning the subject to Mrs. Griswold's friends. It is shown that Dr. Hutchinson made a super-

ficial examination when first consulted upon the subject, which satisfied him respecting the cause of the illness from which Mrs. Griswold was suffering, and that the only other examination was made by Dr. Foote in the presence of his codefendant the day preceding the operation. As to what transpired at the time last mentioned the plaintiff testified: "Dr. Foote made the examination. He first placed her (the patient) in his chair and exposed the abdomen, and with his hands pressed in every way, pushing and working the abdomen in every possible way. Then he took one hand and tapped, and then the other, then one side and then the other, and then from below. That is all the external examination he made. Then after that he inserted his finger in the vagina and seemed to be feeling of the uterus. * * * I think the first remark was made by Dr. Foote to Dr. Hutchinson. He said, 'Doctor, it is just as you said.' My wife next asked the question 'What is it?' He said, 'It is an ovarian tumor, no doubt about it.' " The examination referred to by the witness did not consume to exceed ten minutes and was made without the assistance of instruments or of an anæsthetic of any kind. The plaintiff called as witnesses several physicians and surgeons, who concur in the opinion that an operation should not be attempted for a suspected uterine or ovarian tumor without a most thorough examination of the person of the patient; and they agree that in all cases of doubt, where the theory of pregnancy is excluded, the uterus should be explored by means of a sound in order to ascertain the depth of that organ. One witness, Dr. Crummer, testified as follows:

Q. Is there any case except in which the tumor

has attained such a size where the life of the patient demands its immediate removal, in which it can be said that the sounding of the uterus might be omitted from the diagnosis of the case and still an attempt be made to perform an operation?

A. No, I think there would be nothing to justify an operation in the case except something that would threaten the life of the patient. * * * A complete and thorough examination of the case where an abdominal tumor is suspected would be by several methods; first, by palpation, which simply means the use of the hands over the abdomen; a feeling of the parts by careful manipulation of the hands over the abdomen, and percussion or tapping of the parts with the fingers externally, or with some instrument to get the sounds elicited by percussion; an examination of the parts that can be reached through the vagina; by measurement of the abdomen as to the breadth and height of the mass; an examination with the vaginal speculum; and in many other cases, and in all case of doubt where pregnancy is absent, the use of the uterine sound. * * *

Q. Are the methods of examination you have suggested necessary and indispensable to a careful and proper examination of the patient where pregnancy does not exist and the presence of a tumor is suspected?

A. Yes, sir; of course where there is a prospect of an operation, it always demands a more careful examination if possible than a man would make simply for the purpose of trying to tell the patient in a general way what the matter is. The very fact that a man is going to make an operation increases his responsibility in diagnosing the case,

and he had better make a mistake where he is not going to operate than where he is.

Dr. Somers, another witness, testified that the surgeon should be able, by means of conjoined manipulation, *i. e.*, a digital exploration of the vagina with one hand and the manipulation of the abdomen with the other to determine "to a tolerable certainty" the size and location of the tumor, and whether it is liquid or solid; that if connected with the uterus it is pretty certain to be solid, and if connected with the ovaries it is pretty certain to be a cyst.

It is not pretended that there was in this instance any suspicion of pregnancy, and no objection existed on that ground to the exploration of the uterus in determining the location and character of the tumorous growth. Nor can it on the record before us be contended that this case is within the other exception mentioned by Dr. Crummer, viz., where the condition of the patient is so critical as to require heroic treatment, and where an operation is justifiable as a last resort without the precautionary sounding of the uterus. The testimony of the medical witnesses tends therefore directly to prove the wrong alleged, viz., negligence in the examination of the plaintiff's wife and the consequent unfortunate result thereof. We agree with counsel for defendants that physicians and surgeons are not required to exercise the utmost degree of care or to possess the highest attainable skill in their profession. They do, however, by virtue of the relation assumed by them toward patients, impliedly engage that they possess ordinary skill and that they will in the course of their employment exercise such necessary and proper care and

attention as may reasonably be expected from members of their profession under like circumstances. (*Barney v. Pinkham*, 29 Neb., 350; *Hewitt v. Eisenhart*, 36 Neb., 794; *Smothers v. Hanks*, 34 Ia., 286; *Branner v. Stormont*, 9 Kan., 51; *Ely v. Wilbur*, 49 N. J. Law, 685; *Small v. Howard*, 128 Mass., 131; Ordronaux, Medical Jurisprudence, 42.) The rule above stated is not limited in its application to physicians and surgeons, but applies with equal force to the members of all professions, including attorneys and counselors at law, who assume to possess technical knowledge or skill.

There being competent proof upon the vital issue of the case and tending to sustain the cause of action charged against one of the defendants, a question was presented for submission to the jury, and the direction in favor of both defendants at the conclusion of the plaintiff's evidence was error calling for a reversal of the judgment so far at least as it applies to the defendant Dr. Foote. It remains to be determined whether the court erred in directing a verdict in favor of Dr. Hutchinson. Upon that question the conclusion reached from an examination of the record is that the engagement and responsibility of the last named defendant terminated with the employment of Dr. Foote. When first consulted upon the subject, he advised the plaintiff to consult some physician who was a specialist in that line, saying that he did not consider himself qualified to perform the required operation. To the question "Did Dr. Hutchinson say who you had better go to?" the plaintiff answered, "I don't think he advised any one very strong. The idea was to get the best doctor." He testified further that

just before the operation he made inquiry respecting Dr. Foote's charges, to which the latter answered, "The ordinary fee for such an operation is from $300 to $500, but Dr. Hutchinson tells me you are a poor man and work for your living. I have concluded, therefore, to make it $200." There was some talk at that time about security for Dr. Foote's bill, the plaintiff not being provided with ready money, but before it was given Dr. Hutchinson renewed an offer previously made to advance the necessary funds on the plaintiff's personal note, which offer was accepted and the money thus advanced was, a few days later, by the plaintiff remitted to Dr. Foote at Omaha. Dr. Hutchinson's generosity in that regard, and the interest shown by him in the case, finds a ready explanation in the intimate, personal, and church relations existing between himself and the plaintiff's family. His attitude toward the case after surrendering the patient to the care and treatment of Dr. Foote was that of a friend and counselor only, and in no sense that of a physician or surgeon. The direction in his favor was accordingly right and the judgment as to him will be affirmed. Judgment for defendant Hutchinson affirmed. Judgment for defendant Foote

REVERSED.