GOTLIEB P. OLIVERIUS, APPELLEE, V. ROBERT G. WICKS, APPELLANT.

FILED FEBRUARY 16, 1922. No. 21848.

1. **Pleading**: ADMISSIONS: INSTRUCTION. In an action for assault and battery, the plaintiff alleged that "the defendant unlawfully made an assault upon the plaintiff, and him, the said plaintiff, did then and there beat, wound, and ill-treat," etc. The answer alleged that "the plaintiff assaulted the defendant, and whatever injuries he received was by reason of the necessary defense made by the defendant, and was received while the defendant was lawfully defending himself from said assault, * * * and that he used only such force in repelling the assault as was apparently necessary," etc. *Held*, that the court did not err in instructing the jury that the answer of the defendant admitted the assault as charged.

2. **Evidence**: WITNESS: IMPEACHMENT. Where a witness, called as a medical expert, testified, both upon direct and cross-examination, that there was no history in the medical profession of appendicitis being caused by a blow, and his attention was called to a work proved to be a standard medical authority, with which he said he was not familiar, but which stated that a blow, or traumatism, was probably capable of acting as a causative agent of appendicitis, *held* that the court did not err in admitting in rebuttal the extract in question, it being received, not as substantive proof of the fact whose probability it asserted, but for the purpose of impeaching or discrediting the witness by showing he was mistaken in his statement.

3. **Damages**: REMITTITUR. Plaintiff testified that he had expended $491.50 for medical and surgical services and charges for hospital attendance. There was no evidence of any kind showing that the disbursements represented the fair or reasonable value of the services rendered. *Held* error to permit the jury to consider these charges as an element of plaintiff's damages, but plaintiff is permitted to remit the amount thereof from the judgment.

4. **Assault and Battery**: VERDICT. Form of verdict examined, and *held* not subject to the objection that it included interest.

APPEAL from the district court for Garfield county: BAYARD H. PAINE, JUDGE. *Affirmed on condition.*

*Prince & Prince* and *E. M. White,* for appellant.

*Guy Laverty* and *Davis & Davis, contra.*

Heard before MORRISSEY, C.J., ALDRICH and ROSE, JJ., FITZGERALD and WAKELEY, District Judges.

WAKELEY, District Judge.

Oliverius recovered a judgment against Wicks for $4,045.07 damages for an assault and battery. Wicks appeals. Appellee in his original petition prayed for judgment for $2,108. In a supplemental petition, setting forth injuries which had developed since the commencement of the action, appellee demanded judgment for the total amount of $7,937.80.

The first error assigned, asking the reversal of the judgment, is that the court erred in one of its instructions, viz., No. 5, the part thereof of which complaint is made being as follows: "You are further instructed upon the question of the burden of proof that the defendant, Robert G. Wicks, in his answer, as set out in instruction No. 2, admits the assault as charged against him, and seeks to justify this assault by a plea that the same was made in self-defense, * * * The burden is upon the defendant and it is for him to prove that defense by a preponderance of the evidence, as hereinabove set out."

The particular portion of the instruction which appellant claims is erroneous is that which states that the defendant, Robert G. Wicks, "admits the assault as charged against him." Whether Wicks admitted the assault as charged depends, of course, upon the pleadings, to which, therefore, reference is made.

The plaintiff in his original and supplemental petition averred: "That on the 14th day of June, 1918, the defendant unlawfully made an assault upon the plaintiff, and him, the said plaintiff, did then and there beat, wound, and ill-treat," etc. The answer alleged: "That on the 14th day of June, 1918, the plaintiff assaulted

Oliverius v. Wicks.

the defendant, and whatever injuries he received was
by reason of the necessary defense made by the de-
fendant, and was received while the defendant was law-
fully defending himself from said assault; that prior
to the assault above set forth, the plaintiff had abused
the defendant and attempted to provoke an assault, and
had threatened to assault and beat the defendant, which
threats had been prior to the assault aforesaid com-
municated to the defendant; that at the time of said as-
sault, the defendant was lawfully upon the public
street of the city of Burwell: and that he used only
such force in repelling the assault as was apparently
necessary, considering the violence of the assault and
the threats which the plaintiff had before said assault
made." These allegations were followed by a general
denial. Plaintiff's reply was a general denial as to all
allegations of the answer except such as admitted the
truth of plaintiff's petition.

The question therefore is: Was the court right in
giving the instruction that he did? That is, did the
answer of the defendant admit the assault charged in
the petition? We think it did. In the first place, it is
pertinent to observe that it is the law of this state that,
in civil actions for assault and battery, no evidence tend-
ing in any way to justify the assault and battery is
admissible under a general denial. *Barr v. Post,* 56
Neb. 698; *Mangold v. Oft,* 63 Neb. 397. What is the
effect when, as here, the defendant justifies the assault
by pleading self-defense? In 5 C. J. 657, secs. 84, 85, in
a discussion of the nature and effect of pleas in actions
of this character, it is said: "A legal plea of justification
must admit the battery as alleged." And again: "A
plea of *son assault demesne* (as is the plea here) admits
the offense charged but seeks to avoid it on the ground
of self-defense."

In *Le Fevre v. Crossan,* 3 Boyce (Del.) 376, which
was an action such as this, for assault and battery, the
court said: "It is a principle of pleading that every

justification pleaded must, expressly or tacitly, confess the act which it is intended to justify. And usually one may not plead in avoidance of a fact which the plea does not admit, for it is of the essence of such a plea to confess the truth of the allegation which it proposes to answer and avoid"—citing Gould, Pleading, sec. 111.

So in *Pleasants v. Heard,* 15 Ark. 405, it is said: "The plea of . *son assault demesne* is a special plea of justification. It confesses the battery alleged, but avoids and justifies it on the grounds of self-defense."

In ·*Watson v. Hastings,* 1 *Pennewill* (Del.) 47, it is said: "The plea of *son assault demesne* only admits the assault and trespass."

And in *Smith v. Wickard,* 42 Ind. App. 508, the court say: "By a plea of *son assault demesne* the defendant justifies an assault and battery, by asserting that the plaintiff committed an assault upon him, and that he merely defended himself."

In the light of these authorities, we think it must be held that the plea of justification, viz., self-defense, interposed by Wicks necessarily admitted the assault and battery. Throughout his evidence Wicks admitted beating the plaintiff, but endeavored to prove that the plaintiff was the aggressor.

The second point raised by appellant relates to the admission in evidence of an excerpt from a standard medical work, "Warbassey on Surgical Treatment," its reception coming about in the following way: As before stated, the plaintiff filed a supplemental petition. This set forth that some six months after the original injuries had been inflicted upon appellee complications and developments ensued, not apparent or existing at the time when the original petition was filed, which subsequently developed into appendicitis, necessitating the removal of the appellee to hospitals in Omaha, and an operation for appendicitis at considerable expense to the plaintiff, and attended with great pain, and long-

continued suffering, and extreme nervousness, existing at the time of the trial.

The record discloses that appellant inflicted upon appellee grievous injuries, knocking him down with "something hard," striking him a second time, rendering appellee unconscious, and, when he regained consciousness, appellant was on top of him in the gutter, still pounding him and threatening to kill him; that he begged for mercy, and was heard to say, "Oh, don't!" or, "Oh, Bob!" that appellant finally got off appellee, who then went home groaning and moaning; he couldn't walk very good; his garments were torn and covered with blood; his face cut to the bone in two or three places, and his lip cut through; that two of his ribs were broken; that he could not sleep thereafter; that he was often dizzy; his limbs were numb; that because of the injuries to the abdominal region he went to Omaha; was in the Nicholas Senn Hospital for seven or eight weeks in 1919; and after returning home was compelled to return to Omaha in April, 1920, and receive further medical and surgical treatment at the Wise Memorial Hospital. In February, 1919, Dr. Condon at the Nicholas Senn Hospital operated upon him for chronic appendicitis and removed his appendix.

The contention of appellee was that the appendicitis was the result of traumatism, that is, of a blow or blows inflicted in the fight by appellant upon appellee. The contention of the appellant was that appendicitis could not be caused by traumatism, or a blow. Physicians and surgeons were called by each side to maintain its position. Dr. Smith, who attended appellee during his entire illness, testified that, in his opinion, the cause of the appendicitis was traumatism or a blow received in the appendical region at the time of the assault. He further stated that, following the injuries to appellee and prior to his operation for appendicitis, trouble developed with appellee's abdomen; that he had climatic peritonitis, which was a condition of the peritoneum,

evidenced by pain, blowing gas from the bowels, and a
great deal of tenderness all over the abdomen, usually
located in the center over the appendix, and appellee
complained of this very much at certain times, and it
kept on until the witness advised him to go to a hospital
for an operation for appendicitis.

Dr. Condon, of the Nicholas Senn Hospital, who per-
formed the operation for appellee's appendicitis, testi-
fied that, in his opinion, the beating of the appellee on
June 14, 1918, and the bruises inflicted upon him at
that time over the region of the appendix, was the
causative factor of the appendicitis.

Dr. Britt attended and examined appellee once fol-
lowing his injuries, and was called out of the regular
order, as a medical expert, on behalf of the appellant
He testified on his direct examination that, so far as
recognized by the medical profession, and by medical
authorities, within his knowledge, appendicitis was never
caused by a blow; that there had been no history of
direct appendicitis from external violence. Upon his
cross-examination he testified that he could not conceive
of appendicitis being caused by a blow; that it might
be possible, but that there was no history of such a case.
"Q. There is no history of such a case? Then you mean
by that, that if this plaintiff had appendicitis some six
or seven months after the injury and was operated on in
January or February, after the injury in June, 1918,
that such appendicitis could not have been caused by the
injury? A. I think not. Q. It is your opinion that
it could not have been? A. It is my opinion it could not
have been. Q. Have you based that opinion on the
fact that you say that appendicitis is not caused that
way? A. We have no history of appendicitis in that
way; might possibly be, but I doubt it." The witness
further stated that he was acquainted with a medical
work, "Anders on the Practice of Medicine," that he
had read the work, that he knew what Anders assigned
as causes of appendicitis, and that in this connection

Anders stated as follows: "It is not uncommon for excessive or uncommon exertion or a traumatism, or jarring of the body, as in jumping, to act as a favoring cause." Although the witness also stated that the "traumatism" to which Anders referred was a traumatism of a different nature from that supposed to be in issue in the case at bar. The witness was then asked whether he was acquainted with "Warbassey on Surgical Treatment," a modern work published in 1919, and answered that he was not. This work was later identified by Dr. Smith, as a standard medical authority, and the following excerpt therefrom offered and received in evidence: "Traumatism to the appendical region should be avoided, as this is probably capable of acting as a causative agent."

So that the question is: Was the admission of this extract in evidence under the conditions surrounding its reception erroneous? Under the decision in *Van Skike v. Potter,* 53 Neb. 28, we must, of course, consider it settled in this state that medical books cannot be received as independent evidence of matters stated in them. But the question here is: Was the reception of this excerpt under the circumstances erroneous? We do not think so. Dr. Britt was called in behalf of the defendant as a medical expert. He had upon direct examination stated that, so far as recognized by the medical profession, appendicitis was never caused by a blow; that there had been no history of direct appendicitis from external violence. Then, upon cross-examination, as above noted, he went somewhat out of his way to reiterate his statement that medical history furnished no example of appendicitis arising from a blow. His attention was directed to Warbassey's book, with which he stated he was not familiar. This being the situation, and the book having been identified by Dr. Smith as a standard medical authority, the paragraph in question was admitted upon rebuttal.

It was not in any sense admitted as independent evi-

dence to prove substantively the matter therein recorded, but to discredit or disprove the statements reiterated by Dr. Britt that in the medical profession there had been no history of appendicitis as the result of a blow. It was, we think, competent, as in the nature of impeaching testimony, and to show the jury that Dr. Britt was mistaken in his positive assertions. We think this the logic of *Van Skike v. Potter, supra,* where the court say (p. 41): "They (medical books) were not offered for the purpose of fortifying an opinion which had been expressed by an expert upon the witness-stand, and whose opinion was predicated upon the text book offered, *nor were they offered for the purpose of showing that they contradicted the opinion expressed by such expert.* But they were offered as independent evidence to sustain the plaintiff's contention." Dr. Britt's assertion had been, there was no recorded history of such a case; the book showed there was, and we think it was competent, as is strongly intimated in the language just quoted.

*Pinney v. Cahill,* 48 Mich. 584, was an action for damages against the defendant, whose ill-usage and neglect, it was claimed, caused the death of the plaintiff's horse. Graves, C.J., in rendering the opinion of the court said:

"The plaintiff produced a witness who swore that he was a veterinary surgeon of twenty-five years' standing, and his opinion as an expert being called for he swore that in his opinion the horse died from being overfed when too hot, which would produce colic. On cross-examination, he said that colic was caused by over-driving and feeding when the animal is too warm; that all works of good authority spoke of it, and that the 'Modern Horse Doctor, by Dr. Dodd,' was a work of that kind. The defendant then offered to show from this work of Dr. Dodd, where the author treats of colic, the passage following: 'In nine cases out of ten colic is the result of impaired digestive organs; the food

runs into fermentation and evolves carbonic acid gas.' This evidence was offered to discredit this expert in connection with his cross-examination. The plaintiff objected to its introduction, but the court admitted it.

"The rule is acknowledged in this state that medical books are not admissible as a substantive medium of proof of the facts they set forth. But the matter in question was not adduced with any such view. The witness assumed to be a person versed in veterinary science; to be familiar with the best books which treat of it and, among others, with the work of Dodd. He professed himself qualified to give an opinion to the jury from the witness-stand on the ailment of the plaintiff's horse and its cause, and the drift of his answer was to connect the defendant with that ailment. He borrowed credit for the accuracy of his statement by referring his learning to the books before mentioned and by implying that he echoed the standard authorities like Dodd. Under the circumstances it was not improper to resort to the book, not to prove the facts it contained, but to disprove the statement of the witness and enable the jury to see that the book did not contain what he ascribed to it. The final purpose was to disparage the opinion of the witness and hinder the jury from being imposed on by a false light. The case is a clear exception to the rule which forbids the reading of books of inductive science as affirmative evidence of the facts treated of."

*City of Ripon v. Bittel,* 30 Wis. 614, was an action for damages for injuries sustained by reason of a defective sidewalk. It was objected that the court erred in admitting in evidence certain treatises on surgery which were offered by the attorneys for the plaintiff. The court said: "The record does not inform us what the purpose or object of the offer of the treatises was. Counsel suggests that it may have been to expose or discredit the medical witnesses, examined as experts, who, founding their opinions upon the same treatises, recognized as standard authority, had testified that the books

laid down such and such particular propositions or theo-
ries, or such and such particular conclusions, when in
truth and in fact the books did not do so and the wit-
nesses were mistaken. Counsel asks if, under such cir-
cumstances, the books would not be admissible as in the
nature of impeaching evidence, or to show that the
experts were in error. We cannot say that the admission
would be improper, and so must overrule the objection."

It is also contended the judgment should be reversed
because the court in instruction No. 10 permitted the
jury to consider, as an element of damages, medical
and surgical services and hospital bills which the plain-
tiff had paid or become liable for. The record discloses
no evidence touching the fair and reasonable value of
the physicians' services, or of the value of the board,
attendance, etc., furnished by the Nicholas Senn and
Wise Memorial Hospitals, in which appellee was for
a long time following his injuries, and in one of which,
the Nicholas Senn, the operation for appendicitis was
performed. These expenses aggregated, according to ap-
pellee, $491.50. He testified entirely from memory and
with some uncertainty. He produced no receipted bills.
No physician testified as to the value of services rendered
by him. No one connected with either hospital testified
as to the amount paid by appellee, or as to the reason-
able value of its services to or attendance upon him;
the only evidence as to these disbursements being that
appellee paid the Nicholas Senn Hospital $175, and the
Wise Memorial Hospital $109, for the privileges of the
same. Service such as these are of a peculiar kind, and
we do not think the jury could, without the aid of
testimony, have formed a reliable opinion as to their
value. The case at bar, therefore, does not fall within
the category of those pressed upon us by counsel for
appellee, where the testimony disclosed the nature, extent
and details of the services rendered, the number of phy-
sician's visits, etc., constituting a basis upon which the
court has in some cases permitted the jury to assess a

value.   The judgment, however, should not be reversed for this error, if appellee is willing to submit to a remittitur in the sum of $491.50.

The final error assigned is that the jury included interest in its verdict.   The verdict was:   "We, the jury duly impaneled and sworn in the above entitled cause, do find for the plaintiff, Gotlieb Oliverius, and fix his damages at $4,075.70, with interest included, J. H. Webb, Foreman."   When we bear in mind that this particular form of verdict was given by the court along with his instruction No. 16 as a form approved by him, in the event the jury found for the plaintiff, we agree with counsel that this simply meant the plaintiff was to have judgment for the amount found due (to be inserted in the space left blank), and that nothing was to be added for interest to that time.

If, therefore, the appellee shall, within 20 days from this date, file in this court a remittitur for $491.50 from the judgment recovered, then said judgment shall be, and, in that event, is affirmed.   If said remittitur be not so filed, then said judgment shall be reversed and the cause remanded for a new trial.

AFFIRMED ON CONDITION.