CORA GORSUCH, APPELLEE, v. JESS GORSUCH, APPELLANT, IMPLEADED WITH KATHRYN SUDDARTH, APPELLEE.

26 N. W. 2d 598

Filed March 28, 1947.    No. 32102.

*F. J. Reed,* for appellant.

*Morrow, Lovell & Bulger,* attorneys for appellee Suddarth.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and POLLOCK, District Judge.

PAINE, J.

The defendant, Jess Gorsuch, appeals from the decree rendered upon his second petition for the modification of a divorce decree with respect to the custody of his minor son.

The plaintiff, Cora Gorsuch, filed her petition for divorce on the ground of cruelty November 18, 1936, alleging that her husband had deserted her and her baby, Norman Paul, born July 3, 1936. A divorce was granted the plaintiff December 23, 1936, and she was awarded the custody of the child, with $10 a month support money.

On February 8, 1941, the defendant filed a petition alleging that plaintiff was an unfit person to have the custody of said child, and asked the court to modify the decree as to the custody of the boy, setting up that on May 11, 1939, he had been married and desired now to be given the sole custody of his son. On March 26, 1941, he filed a supplemental petition against Glen Suddarth and Kathryn Suddarth, who then had the custody of the child, and they filed answer and denied that defendant was a fit or suitable person to have custody of the child. Many witnesses testified at the trial, and the court awarded the custody of the child to the defendant, Jess Gorsuch. From this decree, the plaintiff, Cora Gorsuch,

and the interveners, Glen Suddarth and Kathryn Suddarth, appealed to this court.

The first opinion of this court in this case was released July 9, 1943, and appears in 143 Neb. 572, 10 N. W. 2d 466. It found that neither the plaintiff nor the defendant should have the custody of the boy, but his custody was granted to Mr. and Mrs. Suddarth, who were the only parents the boy had known, and they had provided him with a good home and with proper educational and religious surroundings.

Upon motion and brief for rehearing, a supplemental opinion was entered by this court under date of October 25, 1943, found in 143 Neb. 578, 11 N. W. 2d 456, in which this court decided that, from the evidence contained in the bill of exceptions, neither the father nor the mother was a fit, proper, or suitable person to have the custody of Norman Paul Gorsuch, the child involved.

On April 5, 1945, Jess Gorsuch filed a petition for the modification of the decree insofar as it awarded the care and custody of the minor child to the Suddarths; and prayed to award same to the defendant.

On May 22, 1945, Jess Gorsuch filed a supplemental petition, setting forth that Glen Suddarth had died and that Kathryn Suddarth is unable to make a proper or suitable home for the minor child, and that she will be dominated and controlled in its care and custody by Cora Gorsuch.

On June 2, 1945, Kathryn Suddarth filed an answer, in which she said that, notwithstanding the death of her husband, she was fully capable, both financially and otherwise, to continue to care for, rear and educate said child as if he were her own, and that his religious and secular education and general welfare have not changed by the death of her husband. She further alleged that she had cared for the child several months prior to September 6, 1937, while plaintiff was employed at housework; that since he was two and a half years old she had had him continuously, had provided the major

portion of his support, carefully preserved his health, clothed him properly, and expended considerable sums of money in so doing; and that a very deep and abiding attachment had grown up between the child and herself. She prayed that the petition of Jess Gorsuch be dismissed and it be decreed that said child should remain in her custody.

On July 20, 1945, Cora Gorsuch filed her answer. She alleged that the amount contributed by Jess Gorsuch was entirely inadequate for the care and support of the child, because of the rise in prices of food, clothing, and necessaries of life; that she was gainfully employed and was willing to contribute a reasonable sum to assist in the expense of caring for her son in the Suddarth home; that she was required to spend twelve hours each day working, and unable at present to provide him a home, but that when she is able to provide a home for him she intends to ask the court for the care, custody and control of her child; that she objects to the custody and control of the child being given to the defendant, Jess Gorsuch, for the reason that he is not a fit and suitable person to have the care, control, and custody of the child, and has been so adjudged by the court; and prayed that the custody of Norman Paul be left with Kathryn Suddarth.

On July 20, 1945, Jess Gorsuch filed a reply, denying the facts set out in the answers of Cora Gorsuch and Kathryn Suddarth.

Trial was had in the district court at Gering on July 20 and 21, 1945. All parties appeared in court with counsel. At the close of the two days' trial, in which the evidence of many witnesses was taken, the case was taken under advisement.

On October 19, 1945, written briefs having been submitted, it was ordered that a journal entry be drawn as per the oral instructions given by the court.

On October 22, 1945, Jess Gorsuch filed motion for new trial, in which he set up that the judgment and decree was contrary to the evidence, contrary to the law,

and not supported by the weight of the evidence; that the court erred in adjudging that the best interests of the minor child, Norman Paul, would be served by dividing his custody between his father and Kathryn Suddarth; and that the court erred in denying the custody of the child to Jess Gorsuch for nine months of the year and awarding his custody to a person who was a paid custodian.

On January 19, 1946, a decree was entered, in which the court stated: "That the record of the testimony in the former proceedings brought by the defendant, Jess Gorsuch, for modification of the original decree herein was offered in evidence in this proceeding, the same being the record in Case #31610 of the Nebraska Supreme Court, the opinion of which is reported in 143 Neb. 572, 578, and the Court finds from a careful examination of said record and of the testimony adduced in this proceeding, that the defendant, Jess Gorsuch, has failed to show that there has been any material change in the circumstances of the parties touching upon their respective suitability and fitness to have the custody of the said Norman Paul Gorsuch. The court, therefore, finds that the judgment of the Supreme Court in Case #31610 that neither the father or the mother is a fit, proper and suitable person to have the custody of Norman Paul Gorsuch, is binding upon this Court. * * * and finds that the best interests of said child require that he remain in the custody of the impleaded defendant, Kathryn Suddarth, until the further order of the court, * * * ."

The court further found that the incomes of both plaintiff, Cora Gorsuch, and Jess Gorsuch, defendant, had materially increased since the trial of the first petition; that the support and care of said child required the sum of at least $30 a month; and it was ordered that the plaintiff, Cora Gorsuch, and the defendant, Jess Gorsuch, should each pay to the clerk of the court the sum of $15 a month for the support of the child from

September to May of each year, commencing November 1, 1945, and continuing until further order of the court.

The court found that the death of Glen Suddarth was not such a change in the circumstances as to justify a modification of the former decree as to the custody of the child. It further found that the plaintiff, Cora Gorsuch, and the defendant, Jess Gorsuch, were each entitled to visit said child at the home of Kathryn Suddarth at reasonable times; that the defendant, Jess Gorsuch, was entitled to have the child visit him at his home at the Thanksgiving and Easter vacations and the long summer vacation of each year; that he should call at the home of Kathryn Suddarth and get said child and return said child at the conclusion of each vacation period; and that Kathryn Suddarth should have the right to visit the child at the home of Jess Gorsuch at reasonable times during such vacation periods.

A journal entry was entered January 19, 1946, in which the court announced that it was agreed by the attorneys that the motion for new trial filed by Jess Gorsuch prior to the journalizing of the judgment should stand as traversing the judgment finally entered January 19, 1946. From this decree Jess Gorsuch, defendant, appealed to this court.

To the decree entered January 19, 1946, Jess Gorsuch, defendant and appellant, has set out ten assignments of error. However, an examination of these alleged errors discloses that not all of them were called to the attention of the trial court in the motion for a new trial, and therefore will not be taken up in this opinion. We will consider only those set out heretofore in the motion for a new trial.

We will now examine the evidence as to the foster mother, Kathryn Suddarth, who has raised this boy in her home since he was a small child. She testified that he was in the fourth grade in school, and attended Sunday School; that she had never let the boy's mother, the plaintiff, Cora Gorsuch, take the boy; that she had not

taken him to Cora's apartment in Omaha, but had taken him to her sister's in Omaha twice, but did not stay there overnight; and that they had telephoned to Cora and she saw him on those two occasions. Two or three times Cora had come to Rising City on Saturday night, stayed for the week end to see her boy, and had gone back to Omaha on Sunday evening. Once Cora was there when Jess was there, which was in January 1944.

Mrs. Suddarth testified that her husband, Glen, died May 2, 1945; that he left her no real estate, but left a plumbing shop and equipment, which she still owns; that he also left $1,000 of bonds, and about $2,000 in the bank; and that she also had about $300 of her own savings. She also testified that he left an automobile and furniture, and also left a blacksmith shop, but she sold that for $100. She testified that if the boy was left with her she could, if necessary, do washing and ironing for a living and keep him with her. She stated that the house she has lived in in Rising City for the last five years belongs to the Wallace estate; that Ervin Wallace was Cora Gorsuch's father, and the Wallaces have permitted the Suddarths to live in said house for five years without paying any rent; that she had a very large garden connected with the house, where she raised enough potatoes and garden stuff to run them through the winter, and also raised a lot of chickens; that the boy, Norman, plays with three girls across the street and with two boys a block from home; that he never leaves without asking and telling her where he is going; that he has a dog to play with; that she had at her own expense bought clothing, including winter clothes, snow suits, pants and overalls, and heavy underwear, a bicycle, and also gave Norman spending money, and in addition bought him books to read; that he regularly attends the Lutheran Church and Sunday School, but she has never had him baptized in the Lutheran faith.

Cora Gorsuch testified as follows: "Q. Have you observed Mrs. Suddarth's conduct in connection with the

child? A. Well, she is very kind and affectionate towards him. Q. From your observation is the child contented? A. Yes, he is."

Mrs. Suddarth testified that Cora gives her money for Norman and had sent her money through the mail for that purpose, but that the father had made no contribution of money or clothing to the boy in the last two years, except paying the $10 a month as ordered; that he had never written to the boy, and had only written to her once when he asked if Norman could come out there to the ranch for Christmas, and she answered that there was no Christmas vacation.

We do not believe the assignments of error should be sustained in any respect. On the other hand, it is our view that the trial court was not justified in the liberal provisions of the decree entered in favor of the defendant.

The law as to the parents' rights in such a situation as the facts show in the case at bar appears to be: "Since they are not absolute rights, but must yield to the best interests of the child, the natural rights of a parent to the custody and control of his infant child are subject to the power of the state, and may be restricted and regulated by appropriate legislative or judicial action. * * * The state's power in this respect is based on its position as parens patriae, on the right of the child, as citizen and ward, to its protection, as well as upon the state's interest in its own perpetuation." 39 Am. Jur., Parent and Child, § 15, p. 602.

"The welfare of an infant is paramount to the wishes of the parent, where it has formed a proper and natural attachment for another person who has long stood in the relation of a parent with the parent's consent." In re Burdick, 91 Neb. 639, 136 N. W. 988. See, also, 17 Am. Jur., Divorce and Separation, § 683, p. 517.

"The welfare of the child being the one question of primary consideration to which all others must yield, the court must patiently examine the evidence in the light of the age of the child, its past and future. The question

involves the study of the proposed home itself, and its entire surroundings, the temporal welfare of the child, as to food, clothing, discipline, and, if of tender years, careful nursing when required, and medical attention." Kaufmann v. Kaufmann, 140 Neb. 299, 299 N. W. 617.

Appellant cites us to section 38-107, R. S. 1943, which states that the father and mother are the natural guardians of their minor children, and if either dies, or is disqualified, or has abandoned the family, the guardianship falls on the other.

We recognize this as the law in Nebraska, but in the case at bar the father absolutely abandoned his little boy for years, the mother turned the baby over to Mrs. Suddarth when it was perhaps eight months old and went to work, and for many years neither saw the little lad except at very infrequent intervals. Both parents appear now to have developed quite an interest in their child, and each is now required by the decree to contribute monthly the same amount to his support.

The evidence discloses that the mother works for long hours daily as a beauty operator in Omaha, and the father is a ranch hand in western Nebraska. This boy has been brought up in a small town, under very quiet and pleasant surroundings, during all these years by his foster mother, Mrs. Suddarth, who is, since the death of Mr. Suddarth, the only parent he has ever known, and her home is the only home he has ever known. We do not believe that it would be for the best interests of this little lad to be taken out to a ranch in western Nebraska for either the long or short vacation periods.

It is our opinion that both the plaintiff, Cora Gorsuch, and the defendant, Jess Gorsuch, should be allowed to visit their boy, Norman Paul, at reasonable times and places at Rising City, with the privilege of visiting with him in the absence of Mrs. Suddarth.

The trial court provided for the payment of support money of $15 a month from the plaintiff and the same amount from the defendant for only nine months in each

year. These payments, under our modification of the decree as entered, should be made monthly for the entire twelve months of each year.

With these various changes, all as set out herein, the decree entered by the trial court is affirmed.

AFFIRMED AS MODIFIED.

POLLOCK, District Judge, dissenting in part.

In my opinion the Court should not prohibit Norman from visiting his parents in their homes. There is no proof that either of them is morally unfit to associate with him or lives in an environment detrimental to his welfare.

The father appeals, chiefly contending: (1) The previous decision is not conclusive of his unfitness to have custody; and (2) the proof of changed circumstances entitles him to custody. In her cross-appeal the custodian contends Norman should not be allowed to visit in the home of his father.

The record discloses no evidence intended to reflect upon the conduct of Mr. Gorsuch since his remarriage in May 1939. It is undisputed that he and his present wife are church members, regular in their religious practices, use no liquor or tobacco, and enjoy the respect of their neighbors. They have the ability and desire to provide Norman with a good home containing various modern conveniences.

In recent years Mr. Gorsuch has been employed on a cattle ranch of twenty thousand acres located about nine miles from Hyannis. His employer provides him with a small house, produce of the value of about $1.50 a day, feed for his cattle, and pays him a salary which has been increased to $175 a month.

Evidence of changed circumstances is limited. It consists chiefly of the father's improved financial condition, his exemplary conduct in recent years, unsatisfactory visitation conditions in the Suddarth home, the death of the foster father, and the fact that Norman is becoming nervous.

Provisions in divorce decrees relating to care, custody, and maintenance of minor children are subject to modification if there is a material change of circumstances substantially affecting their welfare. § 42-312, R. S. 1943. The previous custodial decree is res judicata only under the circumstances of its rendition. It determined the fitness of the father to have custody at that time, not now.

The future welfare of a child may not be determined on the basis of previous conduct of its parents. 27 C. J. S., Divorce, § 317, p. 1191: "* * * past delinquencies are not of themselves an indicia of present fitness." 17 Am. Jur., Divorce and Separation, § 684, p. 519: "Moreover, a delinquent parent may in the course of time become entirely fit to have and retain the custody of his or her child. So, it has been held that the presumption of unfitness on the part of a father for the custody of his child, raised by refusal of the court to award it to him upon granting a decree of divorce against him, is overcome by evidence of an exemplary life for many months after the passing of the decree."

Since the mother makes no claims, the father asserts an absolute right to custody of his son upon proof of his present fitness. However, parental rights are preferential, not absolute. Custody is not awarded to punish or reward parents. Their rights, desires, and wishes should be considered and respected unless incompatible with the welfare of their children.

In the instant case, Norman has been satisfactorily reared in the Suddarth home for ten years. Bonds of affection have developed. He knows no other home. His custody should not be transferred except for the most cogent reasons. The controlling consideration is his best interests rather than the abandonment of parental rights. I concur in the view that his custody should not be disturbed.

A determination of visitation privileges was not previously sought in these proceedings. The trial court

modified the former decree to provide ordinary rights of visitation to both parents at reasonable times. Further, the father was allowed to have his son visit in his home during Easter and Thanksgiving vacation periods, and during the three summer months, on condition he provide transportation.

Norman's father and stepmother have attempted to visit him in the Suddarth home but the conditions of visitation proved unsatisfactory. On one or two occasions Mrs. Suddarth arranged for the mother to come from Omaha to be present. She declined to permit Norman to leave the house with his father unless accompanied by the mother. Norman was not cordial and was too timid to answer casual inquiries without asking Mrs. Suddarth what he should say.

Friction has developed between the father and Mrs. Suddarth. For much of six years they have litigated over Norman's custody. Each attempts to prove the other unfit for custody, but all evidence is too remote in point of time to be material to the issue of present fitness. It was only with the aid of counsel that the father first learned his infant child had been left in the Suddarth home. Norman has never visited his mother in her home. Until after the trial of this case his father had never seen him since he was a baby, except in the Suddarth home. After all evidence was adduced and before announcing a decision, the trial court sustained the father's motion for the specific privilege, independently of these proceedings, to allow his son to visit in his home during the Thanksgiving vacation period of 1945. The record is silent as to what transpired, but it may be assumed that if the circumstances of this trial visit were detrimental to the welfare of the boy such fact would have been shown. Shortly after this visit judgment was rendered.

The opinion of this court accords both parents visitation privileges in Rising City in the absence of Mrs. Suddarth. It does not permit visits in the home of

either parent. The trial judge whose decision was previously appealed, accorded complete custody to the father. Following reversal by this court, the trial judge who presided in these proceedings allowed the son to visit in the home of his father during two holiday periods, and the three summer months. Apparently both judges who saw and heard Mr. Gorsuch were impressed with his fitness to associate with his son. Norman will be eleven years of age next July. Until it is shown to be detrimental to his welfare I favor allowing him to associate with his parents and to visit in their homes. If he may associate with his parents in the absence of Mrs. Suddarth, I see no need to do so in Rising City.

It is stated in the opinion written by Justice Johnsen in York v. York, 138 Neb. 224, 292 N. W. 385: "Indeed, neither the father nor the child should be deprived, more than the necessities of the situation reasonably require, of the opportunity for mutual cultivation, through association, of acquaintanceship and love for each other. Wilkins v. Wilkins, 84 Neb. 206, 120 N. W. 907. (133 Am. S. R. 618.) And what youngster's life would not normally be enriched, in James Whitcomb Riley fashion, by a vacation at his grandparents, joined with the comradeship of his father? In any event, we believe with the trial court, until the contrary has been demonstrated, that the child will profit from the relationships which the decree permits."

This court has accorded visitation privileges to a mother whose husband charged her with adultery and was granted a divorce and custody. Hobza v. Hobza, 128 Neb. 598, 259 N. W. 516. The opinion recites that the mother deserted her young daughter without cause, and traveled over the state working in many towns as a housemaid. The trial court was affirmed in allowing her, "if she wishes, of taking the little girl with her, except when she is in school, for a reasonable length of time, perhaps a week, or even a month during the summer vacation."

The longest period this court has permitted visitation in the home of a parent denied custody is the summer vacation period. Carlson v. Carlson, 135 Neb. 569, 283 N. W. 214.

In Frazier v. Frazier, 109 Fla. 164, 147 So. 464, it was held under the circumstances of that case it was inadequate to only allow an eleven-year-old daughter to visit her father two weeks a year. The opinion says "The welfare of the child must, of course, be regarded as the chief consideration * * * but the inherent rights of parents to enjoy the society and association of their offspring, with reasonable opportunity to impress· upon them a father's or a mother's love and affection in their upbringing, must be regarded as being of an equally important, if not controlling consideration in adjusting the right of custody as between parents in ordinary cases. No relationship in life should be regarded as more sublime, nor should any inherent right of an individual be esteemed more highly, than that which arises out of the natural relationship of love and affection which normally exists between parent and child, regardless of what may be the private individual code of morals, or the race, color, creed or station in life of the father or mother."

In Chadwick v. Chadwick, 275 Mich. 226, 266 N. W. 331, visitation privileges were restricted because of the immorality and misconduct of the father who had been convicted of a crime. The appellate court enlarged his rights of visitation saying: "Notwithstanding defendant's present incarceration, as the result of a criminal conviction, the law does not preclude repentance, reformation and forgiveness."

Solms v. Solms, 225 Mich. 341, 196 N. W. 344, is a case wherein a mother was allowed very limited visitation privileges because of her immorality. After she and a third husband had been married for eight months and had conformed to the rules of propriety and society the court enlarged her privileges, saying: "No good

can come to the boys nor to society in having the boys grow to manhood imbued with the knowledge that their mother was, and is, an immoral woman."

Where there was animosity between an unfit mother and the legal custodian of her child, it was held best that she have the daughter visit alone in her home where they could enjoy each other without restraint. Graff v. Graff, 241 Mich. 302, 217 N. W. 13.

In the recent case of Kane v. Kane, 314 Mich. 529, 22 N. W. 2d 773, it is stated: "'Not only does the plaintiff have a legal right to specific and definite times for access to his child, but the child has a legal right to frequent and pleasant contact with his father. In the opinion of the court the future welfare of the child will be best subserved by making definite provision for the exercise of such rights.'"

A wife was granted a divorce and the custody of a three and a half-year-old daughter in the case of Fitch v. Fitch, 207 Iowa 1193, 224 N. W. 503. The husband was said to have inflicted on his wife intolerable and inhuman physical abuse over a long period. It was held erroneous to allow visitation privileges only so long as the father paid alimony. The opinion says: "Visitation or the denial thereof should not be made to appease one parent or punish the other. Such right of visitation should be allowed or denied, according to what is best for the child. Its welfare must receive paramount consideration, * * *. Unless these visitations with the father will in some way injure the child, they are not to be prohibited, under the facts and circumstances of this case. The associations between father and daughter should not be terminated merely because alimony is not paid. The good there is in the father ought to be afforded the child, and in addition to that, the little girl is entitled to have whatever benefit there may be in the continued acquaintance and association with her grandparents."

Visitation privileges were involved in Wilkins v. Wil-

kins, 84 Neb. 206, 120 N. W. 907. The opinion refers to a four-year-old daughter saying: "Provision was made in the decree that the father should have the right at any reasonable time, upon his good behavior, to visit said child and have said child visit with him in the village of Cook, not exceeding one hour. While the plaintiff is not here complaining. (sic) we deem it proper to say that this seems to us a totally inadequate recognition of the father's rights. He should have an opportunity to become acquainted with his child and to secure her attachment to him, and a child should not be deprived of the acquaintance of her father nor of his love and affection. This can only be secured by association. The father should have the right, if he so desires, to visit the child at reasonable times and with reasonable frequency, and should also have the right to have the child visit him. Such visits, however, should not be protracted for such a length of time, as to, in effect, remove the child from the custody of the mother. It is very difficult to lay down specific rules upon such a subject which will be just and adequate under the varying circumstances which must arise in the future.

It should be sufficient to say that the rights and privileges accorded to each parent should be exercised with good judgment and discretion, with mutual forbearance, and with proper regard to the rights of each other and to the welfare of the child."

If Norman Paul Gorsuch is unable to actually know and associate with his father, it will imply to him there is something shameful about his father, and will suggest to him a feeling of having been betrayed. It may produce conflicts in his sense of loyalty and cause him shame and embarrassment. He is at a very impressionable age. It would seem better, if the conduct of his father were reprehensible, which is not true, that the boy should actually know his father for what he is rather than be kept in a state of suspicion and uncertainty.

A boy of his age needs male influence more than in his early years, and especially since the death of the foster father. Any emotional instability would jeopardize his future welfare. It can be of no help to him to decree that he shall not visit his father. Children from broken homes too often become juvenile problems because of psychological maladjustment. It would be for his best interest to eliminate fear, confusion, uncertainty, inferiority, and inadequacy.

At the age of fourteen Norman may select his own guardian. Bradley v. Bradley, 126 Neb. 52, 252 N. W. 469. Meanwhile, I favor allowing him all possible benefit of acquaintanceship and association with his parents. Since friction unavoidably arises when the father visits in the Suddarth home Norman should visit him in his home, and the litigants should be admonished that no attempt to influence the boy against the other will be tolerated. Visits to the cattle ranch should not be unpleasant for this boy raised in a town of four hundred inhabitants.

My evaluation of the needs and best interests of Norman convince me the trial court did not abuse its discretion in allowing him to visit in the home of his father. Controversy could well arise over the period during which these original visits would be helpful to him. Perhaps they should be limited to only a week or two until their propriety has been confirmed.

I perceive no reason to prohibit this boy from associating with his parents or visiting in their homes under the circumstances stated. Accordingly, I respectfully dissent.