CORA GORSUCH, APPELLANT, V. JESS GORSUCH, APPELLEE: GLEN SUDDARTH ET AL., APPELLANTS.

10 N. W. (2d) 466

FILED JULY 9, 1943. No. 31610.

*Morrow & Miller,* for appellant.

*Bertrand V. Tibbels, contra.*

Heard before SIMMONS, C. J., PAINE, YEAGER, CHAPPELL and WENKE, JJ., and LIGHTNER, District Judge.

PAINE, J.

Action by a father for the modification of a decree of divorce, in so far as it had awarded the custody of his son to the mother. From a decree changing custody to the father, as prayed, the mother appeals. Interveners, with whom the boy is living, join in such appeal.

The transcript discloses that on November 18, 1936, Cora Gorsuch filed petition for divorce against her husband, Jess Gorsuch, alleging that the parties were married at Hyannis on January 16, 1934, and that ever since said marriage plaintiff has conducted herself as a faithful, chaste and obedient wife; that plaintiff is now a resident of Scotts Bluff county. Two children were born to the union, only one of which, Norman Paul, aged four months at the time of filing the petition, is living. On September 18, 1936, the older child of the parties died, and defendant left plaintiff

and no longer supported her, and it is alleged in the petition that he has cruelly treated her, and plaintiff prayed for a divorce, custody of the child, and support.

On December 23, 1936, after a hearing upon the petition and the evidence, the court found the allegations of the petition to be true, and granted plaintiff a divorce, awarding the care and custody of the child, Norman Paul Gorsuch, to the plaintiff, and requiring defendant to pay the sum of $10 a month for the maintenance of the child.

On February 8, 1941, defendant filed a petition for modification of decree, stating that he had fully complied with said decree, and that the circumstances of the parents of said child have changed since the date of the decree in the following respects: That plaintiff has failed to maintain a proper and suitable home for the child, and has abandoned his care and control to strangers; that plaintiff has become an unsuitable and improper person to have the care, custody and control of said child.

Defendant further alleges that on May 11, 1939, he was married to a respectable woman, with whom he is living under happy conditions on a ranch, where he maintains a comfortable, clean and respectable home, conveniently located with reference to schools; that he is gainfully employed, and receiving a sufficient wage to provide for his child's care and maintenance, and would be able to do more for the child if given its custody. Defendant insists that he is a fit and proper person to care for his child, and that it would be for the best interest of the child that his custody be awarded to him, and he asks that the decree be modified to give him the care, custody, control and education of the minor child.

On March 26, 1941, a supplemental petition for modification was filed, impleading Glen Suddarth and Kathryn Suddarth as defendants, and alleging that plaintiff has abandoned the custody of the minor child, Norman Paul Gorsuch, to them, and that they have refused to deliver possession of said child to defendant, and are making an attempt to adopt the child, and defendant prays that he be awarded the cus-

tody and possession of the child, and that the impleaded defendants be ordered to return said child to defendant. On said March 26, 1941, Glen Suddarth and Kathryn Suddarth waived the issuance and service of summons and entered their voluntary appearances.

On August 20, 1942, hearing was held upon the application of the plaintiff for attorney's fees and suit money in re modification of decree. The court gave plaintiff an award of $35 to apply on counsel fees in resisting the petition for modification, and found that defendant was in default of the payment of $200 child support pursuant to the decree, and ordered defendant to pay said amounts into court on or before August 31, 1942, or his petition for modification would be dismissed with prejudice for want of prosecution.

On August 27, 1942, defendant paid into court $235, as ordered. On September 10, 1942, plaintiff filed answer, admitting the rendition of the decree of divorce to her, with the custody of the minor child, but denying every other allegation contained in said petition, and praying that said petition for modification be dismissed.

On the same day Glen Suddarth and Kathryn Suddarth filed answer and cross-petition, denying that plaintiff had abandoned the custody of the child to them, admitting that they have refused to deliver possession of the child to the defendant, Jess Gorsuch, and allege that for more than two years subsequent to the entry of the decree of divorce the defendant refused to comply with the order of the court requiring him to pay $10 a month for the support of the minor child until he was arrested and execution issued. Defendants further allege that the defendant entered into a bigamous marriage with his present wife 33 days after the entry of the decree of divorce against her, and deny that the defendant or his wife are fit or suitable persons to be confided with the care, custody and control of said child.

The answering defendants further allege that they have been married more than 11 years, and live at Rising City, Nebraska; that they have known Cora Gorsuch during her entire lifetime, and for several months prior to September

6, 1937, they cared for the child while the mother was employed at housework; that on September 6, 1937, Cora Gorsuch decided to attend a beauty culture school in Omaha, and the answering defendants offered to take the child into their home, and have since cared for him as their own child; that in November, 1938, the mother of said child took him to Scottsbluff, but she was unable to earn enough money to support it, and wrote these defendants to come out to Scottsbluff and get the child and take it back to their home in Rising City, which they did, and have cared for the child in their own home ever since November, 1938, the same as if he were their own child.

Defendants further allege that Glen Suddarth is engaged in a profitable business, owns his own modern home, and that he and his wife bear an excellent reputation for good moral character in their community, and are regular church attendants; that during all these years they have carefully preserved the health of the child, clothed him properly, and expended considerable sums of money in so doing; that a very strong attachment has grown up between them.

These defendants allege that prior to the divorce the father of the child denied that he was its father, stated he would have nothing to do with it, and for more than three and a half years made no reasonable effort to see the child or inquire after its well-being.

The defendants further allege that the best interests of said minor child require that he remain in their custody, and that they are willing to continue to rear and educate said child as if he were their own; that they desire to proceed with the adoption proceedings, so that Norman Paul Gorsuch may be legally adopted by them as their child. Wherefore, defendants pray that the petition of Jess Gorsuch for modification of the decree be dismissed, and that he be denied his prayer for modification of the decree.

After an extended trial, the district court modified the original decree of divorce, and entered an order that the custody of the boy be granted to the father, with the right to take him to his home in Grant county, from which order the plaintiff and interveners appeal.

The eleven errors relied upon for reversal may be combined generally into the assignment that the court erred in finding that defendant is a fit person to have the custody of the child, or maintains a proper home. Specifically it is charged that the father has forfeited his right to such custody by his conduct, and that the court erred in finding it was for the best interests of the child to commit his care to his father, appellants citing *Schroeder v. State,* 41 Neb. 745, 60 N. W. 89, in which this court said: "The right to the custody of an infant child which the law confers upon its father is not for the benefit of the father, but for benefit of the child."

Appellants also cite the very recent divorce action where the question involved was as to whether the father or the mother should have the custody of two sons, aged 14 and 11 years respectively. We indicated, in effect, that the welfare of the parties' minor children is a question of primary importance as respects custody, and the entire surroundings of the proposed home as to comforts, discipline, religion, and educational advantages should be examined in determining custody. *Osborn v. Osborn, ante,* p. 1, 8 N. W. (2d) 444.

Many witnesses testified at the trial, and in reading this testimony we find many very serious charges and countercharges against both the plaintiff and the defendant, as well as against his present wife, but we refrain from discussing these matters in this opinion.

A close examination of this home and its surroundings is very important. The defendant from his present marriage has no children. He works on the Laughlin ranch of 20,000 acres, approximately nine miles south of Hyannis, Grant county. The proprietor said his duties as a ranch hand consist of feeding cattle in the wintertime, that he calves out the cows in the spring, fixes fences and puts up hay in the summer time to feed to the cattle. His pay is $90 a month, with the milk from two cows, and a garden spot. He has a separate brick-veneer house in which to live.

Since his joining the church in 1939, the father no longer

uses intoxicating liquors, and is regular in church attendance at the Assembly of God denomination, some distance from the ranch. There is a one-room school four miles away. At Hyannis, the county seat, there is an excellent twelve-grade high school.

The defendant's wife, to whom he was married May 11, 1939, has had little nephews and nieces visit at her home, and cared for all their needs. She testified that she would love to take this little boy, Norman Paul, into their home, and promised to make a good mother to him. She said she would give him the affection a mother should give, and would exercise such discipline as might be necessary, and would give her full time to her home duties and to this boy, as she has no outside work to take her away from her home.

There is abundant evidence in regard to Glen Suddarth and wife, who have taken care of this fine boy from the time he was eight months old. Mr. Suddarth has conducted a plumbing business in Rising City for some 15 years, and is 42 years old, and earns around $200 a month, and they have no children of their own, and both sincerely desire to adopt Norman Paul, and would do all in their power to make a good home for him in the future, as they have in the past.

The fact that so many of the prominent people of their community praise their character and standing so highly indicates that the mother of this boy was very fortunate in the selection of a fine home for him. The evidence discloses that they have been paid $10 a month for his keep all of the time they have had him in their care.

"In such a controversy for the custody of the child the order of the court should be made with a single reference to the best interests of such child." *Sturtevant v. State,* 15 Neb. 459, 19 N. W. 617, 48 Am. Rep. 349. See, also, *West v. Ofe,* 110 Neb. 443, 194 N. W. 464; *Steward v. Elliott,* 113 Neb. 421, 203 N. W. 580; *Towle v. Towle,* 141 Neb. 21, 2 N. W. (2d) 536; *Crandall v. Luhnow,* 137 Neb. 13, 288 N. W. 29; *Kaufmann v. Kaufmann,* 140 Neb. 299, 299 N. W. 617.

From a reading of the testimony in the case at bar, we are convinced that the trial court could not have continued to allow the custody of Norman Paul to remain with his mother. It was then a question whether the court, being compelled to make a change, would award the custody of this boy to the Suddarths, who have for years acted as his foster parents at the request of the mother, and who had by the time of the trial become greatly attached to the boy and were willing to adopt him legally, or, on the other hand, should the court award the custody to the father of the boy?

The trial court awarded the custody of the boy to his father, but we believe that a child of such tender years, who has been carefully nurtured and watched over as this child has been by the Suddarths, should not have that custody disturbed, especially in view of the fact that they live in a town with educational and religious advantages immediately at hand, and the child has known no other home or parents.

Therefore, the judgment of the trial court is reversed, and it is directed that the custody of this child remain with the Suddarths until further order.

REVERSED.

YEAGER, J., dissents.


The following opinion on motion for rehearing was filed October 25, 1943.

Heard before SIMMONS, C. J., PAINE, YEAGER, CHAPPELL and WENKE, JJ., and LIGHTNER, District Judge.

PAINE, J.

The court, upon its own motion, having carefully reconsidered the motion and brief for rehearing of the defendant, and in order to clarify its original opinion entered in this case on July 9, 1943, and reported, *ante*, p. 572, 10 N. W. (2d) 466, hereby enters this supplemental opinion.

The proper rule in a divorce case, where the custody of minor children is involved, is that the custody of the child

is to be determined by the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents. Where both parents are affirmatively found to be unfit, the custody of the child will be determined solely by the welfare and best interests of the child. See *Kaufmann v. Kaufmann*, 140 Neb. 299, 299 N. W. 617; *Hobza v. Hobza*, 128 Neb. 598, 259 N. W. 516; 27 C. J. S. 1168, sec. 308; 17 Am. Jur. 517, sec. 683. But this court has never deprived a parent of the custody of a child merely because, on financial or other grounds, a stranger might better provide. See *Voboril v. Voboril*, 115 Neb. 615, 214 N. W. 254.

This court affirmatively finds, from the evidence contained in the bill of exceptions, that neither the father nor the mother is a fit, proper, and suitable person to have the custody of Norman Paul Gorsuch, the child involved. With this clarification, the court adheres to its former opinion, wherein it was found that the best interests of the child required that it be kept in the custody of the impleaded defendants Suddarth until further order of the court.