JANET BITTNER AND DUANE BITTNER, APPELLANTS, V. OTIS W.
MILLER, M.D., APPELLEE.
410 N.W.2d 478

Filed August 14, 1987. No. 85-601.

Debra R. Nickels and Robert V. Roach of Welsh, Sibbernsen & Roach, for appellants.

Richard E. Gee, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

This is a medical malpractice case in which the plaintiffs-appellants, Janet and Duane Bittner, wife and husband, allege that the defendant-appellee, Dr. Otis W. Miller,

negligently performed a surgical procedure in that he failed to properly tie Mrs. Bittner's fallopian tubes, thus permitting them to bleed after the incision was closed, and in that during the course of the procedure, he left a surgical sponge in Mrs. Bittner's body. The Bittners also allege that as a proximate result of that negligence Mrs. Bittner suffered extreme shock and required blood transfusions and further surgery, as the result of all of which both she and Mr. Bittner sustained damages. The Bittners appeal from the judgment of dismissal entered pursuant to the jury's verdict and assign as error the trial court's failures to (1) permit them to amend their petition and (2) grant them a change of venue. We reverse and remand for a new trial.

The Bittners' motion to change venue was based on the claims that the smallness of the community, coupled with Dr. Miller's prominent standing in it, the paucity of physicians in the community, the fact that a great number of the jury panel were past or present patients of Dr. Miller, and the fact that a former mistrial of the case had been reported in the local press, established that a fair and impartial jury could not be selected for a trial at Ord in Valley County.

The Bittners "provisionally" passed for cause the 40 members of the jury panel remaining from the 90 originally summoned, "subject to [their] earlier discussions." The discussions referred to, however, are not preserved in the record. In any event, the jury as ultimately empaneled contained nine persons who were past or present patients of Dr. Miller, each of whom had said that such relationship would not interfere with his or her duty to impartially decide the case. The Bittners exercised their six peremptory challenges so as to remove from the jury's composition two past patients of Dr. Miller, one present patient, one who was slightly acquainted with Dr. Miller, one who considered Dr. Miller a friend, and one who had no relationship with Dr. Miller.

The evidence established that on August 13, 1981, Dr. Miller, a physician engaged in family practice at Ord, delivered the Bittners' fourth child at the Valley County Hospital. The next morning Dr. Miller performed sterilization surgery on Mrs. Bittner. Later that afternoon Mrs. Bittner's blood pressure dropped, and she went into a deep and severe shock. To treat

the shock she was given at least three units of blood, administered a drug which temporarily raises the blood pressure, and placed on shock blocks, which elevate the body's extremities so that less blood will travel to them and more blood will reach the heart and other vital organs. Mrs. Bittner's condition stabilized later that evening so that, in Dr. Miller's opinion, surgery to determine the cause of the complications was not necessary.

The next day, Mrs. Bittner felt ill, had fetid breath, and produced no bowel sounds. Dr. Miller diagnosed a paralytic ileus, that is, a paralysis of the intestinal tract. Dr. Miller's treatment of the ileus was unsuccessful, and 2 days later he ordered an x ray. The x ray revealed an abnormally small amount of bowel gas, the presence of fluid, almost certainly blood, and the presence of a surgical sponge which had to have been inserted during the surgery which Dr. Miller had performed, as Mrs. Bittner had not undergone any prior surgeries. Dr. Miller failed to note the presence of the sponge when he examined the x rays, but he nonetheless recommended additional surgery to treat the ileus. Mrs. Bittner's family requested that a specialist be called in for that purpose.

The specialist operated and found bleeding at the site of the earlier surgery, removed the blood which had accumulated, stopped the bleeding, and retrieved the surgical sponge which had been left behind. The specialist told the family Mrs. Bittner's problems were caused by "a bleeder [which had been] left open." Mrs. Bittner then improved and was ultimately discharged from the hospital.

The Bittners' expert witness testified that in his opinion Dr. Miller rendered "sub-standard care post-operatively" (that is, following the sterilization surgery) and that the surgical sponge should have been "removed by somebody." It was his opinion, however, that leaving the sponge in Mrs. Bittner was not "integral to [her] problems." Dr. Miller's expert witness was also of the opinion that leaving the sponge behind did not cause Mrs. Bittner any injury.

The Bittners' expert opined that Mrs. Bittner's complications were caused by bleeding at the site of the sterilization surgery performed by Dr. Miller. Again, Dr. Miller's expert shared this

opinion. However, no witness testified that the bleeding resulted from Dr. Miller's failure to exercise the generally accepted and recognized standard of care or skill in Ord and similar communities.

When the Bittners' expert was asked whether Dr. Miller's management of the shock Mrs. Bittner experienced following the sterilization surgery was appropriate under the circumstances, Dr. Miller objected. He did so on the grounds that "the pleadings say [Dr. Miller] improperly ligated the tube and there is [sic] not pleadings here calling for [alleging] his improper treatment of shock and the question is not relevant," and also because the issue was a "complete and severe surprise" to Dr. Miller. The trial court sustained Dr. Miller's objection, and the Bittners thereupon requested leave to amend their petition by adding the claimed improper management of the shock as an independent and additional specification of negligence. The trial court denied the request on the ground the proposed amendment constituted a substantial change of the Bittners' prior claims. However, the trial court also observed that the "claim is probably included in the present pleadings in the form that you have it. . . . [T]he jury could very well find either way with the pleadings you presently have."

In spite of the denial of leave to amend the petition, Dr. Miller's expert was permitted to testify on direct examination, over the Bittners' objection, that the quality of medical care Dr. Miller rendered to Mrs. Bittner had been "excellent," including his management of the shock.

At the close of all the evidence, the Bittners moved for a directed verdict on the issue of liability. The trial court overruled the motion and submitted to the jury the issues of whether Dr. Miller negligently tied Mrs. Bittner's fallopian tubes and left a sponge in her and the amount of damages resulting therefrom. The jury, by a vote of 10 to 2, returned a verdict in favor of Dr. Miller. One of the two dissenting jurors had been a patient of Dr. Miller over 20 years earlier; the other dissenting juror did not previously know Dr. Miller.

We begin our analysis of the Bittners' first assignment of error, that the trial court erred in overruling their motion to add mismanagement of Mrs. Bittner's shock as an additional

specific act of negligence, by noting that Neb. Rev. Stat. § 25-852 (Reissue 1985) provides in relevant part: "The court may . . . in furtherance of justice, and on such terms as may be proper, amend any pleading . . . by inserting other allegations material to the case . . . ." We have held that permission to amend pleadings is addressed to the sound discretion of the trial court; absent an abuse of that discretion, the trial court's decision will be affirmed. *Christian Servs., Inc. v. Northfield Villa, Inc.*, 222 Neb. 628, 385 N.W.2d 904 (1986); *First Nat. Bank v. Schroeder*, 218 Neb. 397, 355 N.W.2d 780 (1984); *Hardt v. Eskam*, 218 Neb. 81, 352 N.W.2d 583 (1984). We have also said that although at certain stages of a proceeding a pleading may not be amended so as to change the issues and quantum of proof as to any issue, see *Collection Associates, Inc. v. Eckel*, 212 Neb. 607, 324 N.W.2d 808 (1982), the statute concerning amendments should be liberally construed and amendments permitted where they are proposed at an opportune time and will be in the furtherance of justice, *Building Systems, Inc. v. Medical Center, Ltd.*, 213 Neb. 49, 327 N.W.2d 95 (1982).

Thus, the question is whether under the circumstances of this case the trial court's rejection of the proposed amendment constituted an abuse of discretion.

While it is true that the operative petition did not specifically allege Dr. Miller was negligent in the management of Mrs. Bittner's shock, it did allege that as a proximate result of his negligence Mrs. Bittner suffered extreme shock and required treatment therefor, including blood transfusions and additional surgery. Under that circumstance, expanding the claims of negligence to include the management, or treatment, of the shock could not be considered a surprise to anyone.

The inconsistent reasons given by the trial court for denying leave to amend in and of themselves demonstrate that the proposed amendment did not result in surprise. On the one hand, the trial court said the proposed addition would substantially change the claims against Dr. Miller; on the other hand, the trial court said that the claim was probably included in the pleadings as drawn. Both conditions could not exist at one and the same time. The significance of not permitting the

amendment, of course, is that the court could not, and it did not, instruct the jury that mismanagement of Mrs. Bittner's shock was a claimed act of negligence on Dr. Miller's part.

Having prevented the Bittners from adducing evidence on whether Dr. Miller had been negligent in treating the shock, the trial court compounded its error by permitting Dr. Miller's expert witness to testify there had been no negligence in that regard.

For the foregoing reasons, we must conclude that the trial court's ruling denying the Bittners leave to amend their petition is untenable such as to have deprived the Bittners of a substantial right and may have denied them a just result, and therefore constituted an abuse of discretion. *State v. Heaton,* 225 Neb. 702, 407 N.W.2d 780 (1987); *Fredericks v. Western Livestock Auction Co.*, 225 Neb. 211, 403 N.W.2d 377 (1987).

Because the issue of venue may likely arise in the retrial made necessary by our resolution of the first assignment of error, we consider the Bittners' second assignment.

Except under certain circumstances not relevant to the present case, tort actions against Nebraska residents must be brought in the county where the cause of action arose, where the defendant resides, or where the plaintiff resides and the defendant may be summoned. Neb. Rev. Stat. § 25-409 (Reissue 1985). However, for the convenience of the parties and witnesses, or in the interest of justice, a district court may grant a party's motion to transfer any civil action to the district court for any other county. Neb. Rev. Stat. § 25-410 (Reissue 1985). As with motions to transfer venue in criminal cases, Neb. Rev. Stat. § 29-1301 (Reissue 1985); *State v. Jacobs, ante* p. 184, 410 N.W.2d 468 (1987); *State v. Bird Head,* 225 Neb. 822, 408 N.W.2d 309 (1987); *State v. Kern,* 224 Neb. 177, 397 N.W.2d 23 (1986), we will not disturb the ruling of the lower court on a motion to change venue in a civil action unless an abuse of discretion is shown. *Johnsen v. Parks*, 189 Neb. 712, 204 N.W.2d 804 (1973); *Markel v. Glassmeyer*, 132 Neb. 716, 273 N.W. 33 (1937); *Boyd v. Chicago, B. & Q. R. Co.*, 97 Neb. 238, 149 N.W. 818 (1914); *Hinton v. Atchison & N. R. Co.*, 83 Neb. 835, 120 N.W. 431 (1909).

We also note that a party who fails to challenge prospective

jurors for disqualification and passes them for cause waives any objection to their selection as jurors. See, *Schroll v. Fulton*, 213 Neb. 310, 328 N.W.2d 780 (1983); *Regier v. Nebraska P.P. Dist.*, 189 Neb. 56, 199 N.W.2d 742 (1972). While the fact the "earlier discussions" to which the Bittners refer are not in the record and we therefore cannot determine that their "provisional" passing of the prospective jurors for cause did not waive any objection they may have had to the composition of the jury, see *State v. Lafler*, 225 Neb. 362, 405 N.W.2d 576 (1987), we do not rest our resolution of the issue presented by this assignment on that ground.

Rather, we rest our conclusion that there was no abuse of discretion in denying a change of venue on the basis that a past or present patient of a physician defending a malpractice action is not, by that reason alone, disqualified from jury service. *Van Skike v. Potter*, 53 Neb. 28, 73 N.W. 295 (1897). See, also, *Scott v. McPheeters*, 52 Cal. App. 2d 61, 125 P.2d 868 (1942). We do not overlook the fact that *Van Skike* and *Scott* involved a single juror whereas three-fourths of the jury in this case was composed of Dr. Miller's past or present patients; the fact remains, however, that each of those past or present patients solemnly declared that the relationship would not interfere with his or her impartiality and that the Bittners' voir dire examination failed to demonstrate any factual basis for rejecting their protestations of neutrality.

In compliance with this court's order, the parties submitted supplemental briefs concerning whether we should note as plain error, under the provisions of Neb. Rev. Stat. § 25-1919 (Reissue 1985) and Neb. Ct. R. of Prac. 9D(1)d (rev. 1986), the trial court's failure to grant the Bittners' motion for a directed verdict on the issue of liability because a surgical sponge was left in Mrs. Bittner's body during the course of the surgery Dr. Miller performed.

While *McCall v. St. Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969), suggests by way of dictum that leaving a sponge in a patient's body constitutes negligence as a matter of law, the issue is not present in this case. That is so because negligence is actionable only when it results in damages. *Sesostris Temple Golden Dunes v. Schuman, ante* p. 7,

409 N.W.2d 298 (1987); *Floridia v. Farlee*, 201 Neb. 39, 266 N.W.2d 204 (1978). The uncontradicted evidence is that leaving the sponge in Mrs. Bittner's body did not cause any of the complications which followed the sterilization surgery. That circumstance, coupled with the fact that Mrs. Bittner's body had to be reinvaded to stop the bleeding in any event, at which time the sponge was retrieved, means the evidence failed to establish that any of the damages the Bittners may have sustained were proximately caused by leaving the sponge behind.

REVERSED AND REMANDED FOR A NEW TRIAL.