SHARI L. BROOKE, APPELLANT, V. STEPHEN L. BROOKE, APPELLEE.
453 N.W.2d 438

Filed March 30, 1990.    No. 89-767.

Kent F. Jacobs, of Blevens & Jacobs, for appellant.

Joseph H. Murray, of Germer, Murray & Johnson, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

This is a dissolution of marriage action in which the trial court awarded custody of the parties' infant daughter to the respondent-appellee father, Stephen L. Brooke. In challenging that ruling the petitioner-appellant mother, Shari L. Brooke, assigns four errors, which combine to claim that the trial court erred in (1) not making specific findings of fact and (2) concluding that the child's best interests would be served by its ruling. We affirm.

The first assignment of error is resolved easily, for, so far as the record reflects, the mother did not ask the trial court to make specific findings of fact. See Neb. Rev. Stat. § 25-1127 (Reissue 1989). Moreover, as we have recently noted, the failure to make specific findings of fact in an action such as this, although such findings are unquestionably desirable and helpful in focusing our review, cannot be prejudicial inasmuch as we must in any event review the trial court's judgment de novo on the record to determine whether that court abused its discretion. *Beran v. Beran, ante* p. 296, 450 N.W.2d 688 (1990); *Parker v. Parker, ante* p. 167, 449 N.W.2d 553 (1989). See *Ritter v. Ritter, ante* p. 203, 450 N.W.2d 204 (1990). Thus, there is no merit to the first summarized assignment of error.

We begin our analysis of the issues presented by the second and last summarized assignment of error by recalling once again that the determination as to the custody of a minor child in a dissolution of marriage proceeding is initially entrusted to

the discretion of the trial court, which determination will be reviewed on appeal in accordance with the aforestated rule. Only if the trial court has abused its discretion will its determination be disturbed. *Beran v. Beran, supra*; *Hardy v. Hardy, ante* p. 702, 452 N.W.2d 296 (1990); *Ritter v. Ritter, supra*; *Sutter v. Sutter, ante* p. 118, 449 N.W.2d 236 (1989).

In a dissolution of marriage proceeding, the issue as to which parent shall have custody of the parties' child is determined by parental fitness and the child's best interests; thus, child custody is denied to an unfit parent or a fit parent when the best interests of the child so require. *Beran v. Beran, supra*; *Ritter v. Ritter, supra*.

No useful purpose would be served by detailing the evidence in regard to the parties' fitness as parents. Suffice it to say that the record convinces us that each is a fit parent. Indeed, the mother admits without reservation that the father is a good parent, and the father, although not without qualification, also recognizes the mother's general fitness.

As to the child's best interests, the record shows that the parties lived together as husband and wife for a period of approximately 1 year 3 months. At the time of trial, the father was 33 years of age, the mother was 25, and Heather Lynn, the child in question, was not quite 14 months old. A then almost 3-year-old child, a daughter born to the mother as the result of an earlier relationship, also lived with the parties.

The evidence shows that each parent has adequate housing to take care of Heather, each obviously desires to have custody of the child, and each has the requisite housekeeping and other required skills. Heather is described as a well-adjusted, well-developed, happy child.

Because the mother works, she, while having temporary custody pursuant to the trial court's consent order, relied on babysitters for Heather's daily care. Much of that care was provided by Heather's maternal grandmother, who indicated a willingness to continue doing so, as she enjoyed caring for Heather. However, during the same period of time, the mother's other daughter was being taken care of by a commercial babysitter. The mother explained that the commercial sitter would not accept Heather because she was too young and was

not yet toilet trained. The father is employed as a carpenter and must also rely on babysitters to provide Heather's daily care. On occasion, once every 3 months at the most, he might be called upon to work as far as 90 miles from home. He is described as a responsible person and, in planning for custody of Heather, had explored babysitting arrangements.

While the record describes a good and close relationship between Heather and her half sister, it also establishes that Heather has closely bonded to her father and that she delights in being with him. The mother's brother summarized the relationship between Heather and her father by testifying that her father "would be a very solid father for her. There's a good relationship. Heather plays with him and . . . she runs to him and smiles and you — you can just tell there's a good bond between the two of them." The record is replete with such characterizations of the relationship between Heather and her father.

The record also demonstrates that the father is willing to devote more of his leisure time to Heather than the mother is willing to devote of her spare time. The mother seems to have more of a need than does the father to be engaged in activities outside of the home and to be around people other than her immediate family.

The controlling question is whether the foregoing evidence establishes that awarding the father custody of Heather constitutes an abuse of discretion by the trial court. In apparent recognition that each of the sexes may possess equal child-rearing skills and means, Neb. Rev. Stat. § 42-364 (Reissue 1988) provides that in determining custody, no preference shall be given based on the sex of the parent and "no presumption shall exist that either parent is more fit to have custody . . . than the other." As noted in *Vance v. Vance*, 231 Neb. 334, 436 N.W.2d 177 (1989), § 42-364 did away with the "tender years" doctrine which assumed that the best interests of a child of tender years would be served by placing its custody in and with its natural mother.

An abuse of discretion takes place when the trial court's ruling is untenable such that it deprives a party of a substantial right and just result. *State v. Schall, ante* p. 101, 449 N.W.2d

225 (1989); *Wachtel v. Beer*, 229 Neb. 392, 427 N.W.2d 56 (1988); *Bittner v. Miller*, 226 Neb. 206, 410 N.W.2d 478 (1987). There is nothing in this case which supports a conclusion that the trial court abused its discretion in ruling as it did.

To be sure, as the mother points out, the trial court's ruling necessarily means that Heather's relationship with her half sister will suffer. However, we have recognized that although it is generally sound public policy to keep the children of the same marriage together in the custody of one parent, there are cases where the best interests of even such children dictate that their custody be divided. *Ritter v. Ritter, ante* p. 203, 450 N.W.2d 204 (1990); *Boroff v. Boroff*, 197 Neb. 641, 250 N.W.2d 613 (1977). Children of parents who dissolve their marriage will nearly always lead different lives and form different relationships than would have been the case had the marriage survived. The verity which must be faced and accepted is that no judicial system can make the consequences of a marriage which has been torn asunder the same as those of a marriage which remains whole.

The second summarized assignment of error is as devoid of merit as was the first. Accordingly, we affirm the judgment of the trial court.

AFFIRMED.

GRANT, J., concurring.

I agree fully with the court's judgment of affirmance in this case. I question only the elevation of the concept of "parental fitness" to coequal status with the concept of a child's "best interests."

In this case, the court states: "In a dissolution of marriage proceeding, the issues as to which parent shall have custody of the parties' child is determined by parental fitness and the child's best interests . . . ."

Until recently we had consistently stated that the controlling issue in determining custody of a child is the best interests of the child. "In placing a child's custody with a parent in a dissolution proceeding, a court's primary and paramount consideration is the best interests of the child. Some factors or circumstances which may be considered . . . include considerations of the fitness of the parents . . . ." *Gerber v. Gerber*, 225 Neb. 611, 618, 407 N.W.2d 497, 502 (1987). "The polar star by which all

child custody determinations must be guided is the best interests and welfare of the child." *Moeller v. Moeller*, 215 Neb. 360, 362, 338 N.W.2d 749, 751 (1983). " 'In such a controversy for the custody of the child the order of the court should be made with a single reference to the best interests of such child.' " *Gorsuch v. Gorsuch*, 143 Neb. 572, 577, 10 N.W.2d 466, 468 (1943), quoting *Sturtevant v. State*, 15 Neb. 459, 19 N.W. 617 (1884).

I see no need to establish two primary considerations, to be guided by two polar stars, or to create two reference points on this issue. Fitness of the parents is only one factor, of many, in the basic determination of a child's best interests. Section 42-364(1) specifically so provides. That statute states: "In determining with which of the parents the children or any of them shall remain, the court shall consider the best interests of the children, which shall include, but not be limited to: (a) . . . ·(b) . . . and (c) . . . ." Fitness of the parents is not listed as a statutory factor. Obviously it should be considered, but I see no need to elevate the "fitness" concept to the primary requirement of "best interests" of the child affected. I believe it leads to unnecessary labeling of parents, which should be avoided, and to an inappropriate analysis in some cases.

HASTINGS, C.J., and BOSLAUGH, J., join in this concurrence.