IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF BRITTNEY SUE P.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF BRITTNEY SUE P., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

ROBERT P., APPELLANT.


Filed November 17, 2020.     No. A-20-369.


Appeal from the County Court for Garden County: RANDIN R. ROLAND, Judge. Affirmed.

Gregory A. Rosen for appellant.

Philip E. Pierce, Garden County Attorney, for appellee.

Steven E. Elmshaeuser, guardian ad litem.


PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

MOORE, Judge.

## INTRODUCTION

Robert P. appeals from the decision of the county court of Garden County, sitting as a juvenile court, terminating his parental rights to Brittney Sue P. For the following reasons, we affirm.

## BACKGROUND

This is the second appeal by Robert in connection with the juvenile case involving Brittney Sue. We previously addressed Robert's appeals from orders placing Brittney Sue out of the parents' home and denying Robert's motion to lift suspension of his visitation and granting the

State's motion for relief from providing reasonable efforts. See *In re Interest of Brittney Sue P.*, Nos. A-18-816, A-18-982, 2019 WL 2265203 (Neb. App. May 28, 2019) (selected for posting to court website). The following background is taken, in part, from that opinion.

Brittney Sue was born in December 2017 to Robert and Veronica M., who is developmentally disabled. Veronica is not a party to this appeal and we discuss her involvement only as necessary to address Robert's assigned errors. In 2016, Brittney Sue's four siblings were removed from Robert and Veronica's care due to "chronic neglect." Because of the ongoing case with her siblings, a juvenile petition was filed shortly after Brittney Sue's birth, and she was removed from Robert and Veronica's care. Brittney Sue remained in out-of-home care until she was adjudicated in January 2018, at which time she was returned to Robert and Veronica's home.

On February 1, 2018, the juvenile court held a permanency and review hearing. The court ordered Brittney Sue to remain in Robert and Veronica's home, supervised by the Nebraska Department of Health and Human Services (DHHS). The court's permanency goal was set as reunification by June 1, 2018, with an alternate plan of adoption. The court ordered that Brittney Sue become current on all immunizations and directed Robert and Veronica to sign releases for all medical records regarding a medical exam on January 31.

On July 17, 2018, the juvenile court entered an order for an ex parte change of placement, finding that continuation in the parents' home was contrary to Brittney Sue's welfare, that reasonable efforts had been made before placement to prevent or eliminate the need for removal, and that it was in Brittney Sue's best interests to be placed out of the home. The court continued visitations with the parents with no modification of the permanency plan. On the same day, Robert filed an objection to the change in placement and removal, requesting a hearing on the matter.

On July 31, 2018, the State filed a motion to terminate the parental rights of Robert and Veronica to Brittney Sue and her older siblings. The State alleged that termination was proper under Neb. Rev. Stat. § 43-292(2), (3), (5), and (6) (Reissue 2016) and that termination would be in Brittney Sue's best interests. The record does not show that Robert was appointed a guardian ad litem at this time.

On August 1, 2018, the court held a hearing on Robert's objection to the change in placement and removal of Brittney Sue. Evidence was adduced as to the numerous concerns regarding the care of Brittney Sue by her parents, including their failure to attend to her health and development needs, leaving Brittney Sue and her siblings in a van unattended on at least two occasions, safety concerns in and around the home, and Robert's failure to make progress on the plan for reunification. This evidence is fully detailed in our previous opinion noted above.

On August 1, 2018, the court entered an order denying Robert's objection to the change in placement. The court found a need for Brittney Sue's removal from the home and ordered visitation to continue as scheduled under the ex parte order. Robert appealed this order, which we dismissed for lack of jurisdiction. See *In re Interest of Brittney Sue P, supra*.

The juvenile court terminated the parental rights of both parents to Brittney Sue's siblings on August 31, 2018, finding that statutory grounds to terminate Robert's and Veronica's parental rights existed pursuant to § 43-292(2), (3), (5), (6), and (7) and that termination was in the children's best interests. Termination of parental rights regarding Brittney Sue was not pursued at this time due to the pendency of Robert's appeal in Brittney Sue's case noted above. This court affirmed the termination of parental rights to the siblings. See *In re Interest of Becka P. et al.*, 27

Neb. App. 489, 933 N.W.2d 873 (2019). This opinion provides further details regarding the history of this family and the deficiencies in Robert's and Veronica's parenting abilities.

Following the termination of parental rights to the siblings, the State filed a motion requesting that the parents' visits with Brittney Sue be suspended. The court suspended Robert's visitation, but allowed Veronica's visitation to continue. Robert moved to lift the suspension of his visitation. The State also filed a motion to relieve the Department from providing reasonable efforts to reunify. A hearing was held on these motions on September 28, 2019, and the court the same day entered an order denying Robert's motion to lift suspension of his visitation and granting the State's motion to relieve the Department of reasonable efforts. We affirmed the juvenile court. See *In Re Interest Brittney Sue P., supra*.

On September 23, 2019, the State filed a motion to terminate Robert and Veronica's parental rights to Brittney Sue under § 43-292(2), (5), (6), and (7) and alleging that termination was in her best interests. Veronica voluntarily relinquished her parental rights to Brittney Sue on December 5. On January 7, 2020, the State filed an amended motion for the termination of Robert's parental rights to Brittney Sue omitting § 43-292(5). A guardian ad litem was appointed for Robert on January 10, 2020.

On March 10, 2020, the court held a hearing on the State's motion in limine, which sought to preclude Robert from introducing evidence related to the blood lead levels in Brittney Sue's older siblings. The State argued that this evidence was not relevant because the State was not alleging that there was an issue with Brittney Sue's lead levels. Further, counsel for DHHS argued that "none of the kids had a level that was anywhere that needed to be treated" and that "the only person we're addressing is Brittney Sue, and there is no issue with the lead." Robert made an offer of proof that the evidence would show that high blood lead levels in children could result in speech delays, hearing problems, cognitive disabilities, aggression, defiance, screaming, yelling, hitting, and chewing on strange things; behaviors that the State alleged were caused by Robert's neglect. Robert did not include in his offer of proof any evidence showing Brittney Sue had elevated blood lead levels. The juvenile court sustained the motion in limine, disallowing Robert from introducing lead evidence at trial, finding it was not relevant to the termination of Robert's parental rights to Brittney Sue.

Trial was held regarding termination of Robert's parental rights to Brittney Sue on April 20, 2020. The following evidence was presented at trial.

Joan Schwan, the executive clinical director for Saint Francis Ministries, testified that Robert participated in an Intensive Family Preservation (IFP) program, but had not progressed enough to allow Brittney Sue to return to the home. Schwan testified that Robert had actually regressed in the program, due to Brittney Sue's removal, safety threats, Robert's inability to meet Brittney Sue's basic needs, and an incident where Robert became agitated at one of the therapists. Schwan testified that she was concerned with Robert's ability to parent Brittney Sue based on his mental health diagnoses and lack of progress in IFP.

Breanna Carmen, a therapist at Saint Francis, started working with Brittney Sue's family in June 2018. Carmen testified that Robert was unable to accomplish goals in IFP and that there were continued safety concerns with leaving Brittney Sue in Robert's care. Carmen further testified that during her three years working at Saint Francis, she had never had a case with as many safety concerns as in Robert's case. Carmen noted specific safety concerns including

- 3 -

children being left in hot cars, Robert's anger toward the children and family support workers, abandoned vehicles in the yard, failure to provide medical care, and burning trash inside the family residence. Carmen testified that she would not feel comfortable placing a child back in Robert's care.

Callie Schilz, a family support worker at Saint Francis Ministries, testified that she was the initial reporter to Child Protective Services after finding Brittney Sue and one of her siblings left in a car while it was hot outside. Schilz also testified that when she talked with Robert about safety concerns, such as abandoned vehicles on the property, burning trash, and having a loaded gun on the premises, Robert told her that he did not see a safety concern.

Brittney Sue's foster parent, testified that Brittney Sue has not left her care since July 2018. At the time of trial, Brittney Sue had been in her care for 19 out of the most recent 22 months.

Garden County Sheriff Michelle Quinn testified that she conducted a search of Robert's residence on June 27, 2018, and that during the search she found two firearms in vehicles outside the residence and one loaded firearm inside the residence. Quinn testified that the firearms were located in areas the children had access to, which was a safety concern.

Dennis O'Brien, a child and family services specialist with DHHS, testified that he worked with the family from December 2016 to the present. O'Brien testified that in the entirety of his experience with the family, Robert was unable to accomplish any of the goals of his case plan. O'Brien also testified that he had safety concerns with Brittney Sue returning to Robert's care due to Robert's anger and hostile behavior, a history of the parents letting the children play on abandoned vehicles and other equipment, and the parents' general disregard for instruction by various providers.

O'Brien also testified that he was aware that Brittney Sue's siblings had high levels of lead in their blood. However, documentary evidence only showed blood lead levels for Brittney Sue's older siblings; no documentation was provided regarding the levels of lead in Brittney Sue's blood.

Based on the evidence presented, the juvenile court terminated Robert's parental rights to Brittney Sue. Robert now appeals.

ASSIGNMENTS OF ERROR

Rephrased, Robert assigns that the juvenile court erred when it (1) terminated his parental rights under § 43-292(7) and found that termination was in Brittney Sue's best interests, (2) granted the State's motion in limine, prohibiting his introduction of evidence regarding the children's blood lead level, and (3) did not state in writing the conclusions of fact as requested by an oral motion from counsel.

STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Taeson D.*, 305 Neb. 279, 939 N.W.2d 832 (2020).

ANALYSIS

*Statutory Basis.*

Robert first assigns that the juvenile court erred when it terminated his parental rights under § 43-292(7). Robert argues that he was denied constitutionally protected due process under Neb. Rev. Stat. § 43-292.01 (Reissue 2016), which provides that when termination of the parent-juvenile relationship is sought under § 43-292(5) (alleging mental illness or mental deficiency as ground for termination), the court is required to appoint a guardian ad litem for the alleged incompetent parent. Robert asserts that because he was not appointed a guardian ad litem at the time the State alleged grounds for termination under subsection (5), any evidence regarding his alleged mental incompetency from periods of time when he was without a guardian ad litem should not have been received at trial. As it relates to § 43-292(7) (allowing for termination when juvenile has been in out-of-home placement for 15 or more of most recent 22 months), Robert claims that the calculation of Brittney Sue's out-of-home placement should not have begun until the allegations under subsection (5) were removed.

Rather than the formal rules of evidence, we evaluate the admission of evidence in termination of parental rights cases using a due process analysis. *In re Interest of Rebecka P.*, 266 Neb. 869, 669 N.W.2d 658 (2003); *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker. *Id*. Robert argues that he did not receive fundamentally fair treatment using the procedural due process analysis because he was not afforded the opportunity for a guardian ad litem when the State filed a motion to terminate parental rights alleging mental deficiency under § 43-292(5).

The operative motion for termination of parental rights upon which the case was tried did not include § 43-292(5) as an allegation, and relied on § 43-292(2), (6), and (7) for the statutory basis for termination. Therefore, there was no requirement for the appointment of a guardian ad litem for the father for the termination proceedings, although one was appointed following the filing of the operative motion. Further, there was no evidence specifically presented at this termination trial regarding Robert's mental status and any evidence from prior proceedings regarding his mental status has been disregarded in our review. Robert was fully apprised of the statutory bases upon which the State was pursuing termination and he had full opportunity to confront the State's evidence and present evidence on his own behalf.

In addition, the failure of the court to appoint a guardian ad litem for Robert in the prior proceedings is harmless error. When termination of parental rights is sought on multiple grounds, including that the parents are unable to discharge parental responsibilities because of mental illness or mental deficiency, and an appellate court finds that at least one other ground is established by clear and convincing evidence and that termination is in the best interests of the child, the failure of the juvenile court to appoint a guardian ad litem for the allegedly incompetent parent is error, but not plain error requiring automatic reversal, and the failure to appoint a guardian ad litem will generally not require reversal unless it is assigned as error on appeal and shown to have been

prejudicial to the parent; in such cases, if the record establishes that another statutory ground for termination exists, independent of any mental deficiency of the parent, the failure to appoint a guardian ad litem may be harmless error. *Wayne G. v. Jaqueline W.*, 288 Neb. 262, 847 N.W.2d 85 (2014).

In order to terminate parental rights, a court must find by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that the termination is in the child's best interests. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). In this case, Robert's parental rights were terminated under § 43-292(2), (6), and (7). Robert does not challenge the termination under § 43-292(2) and (6). In our de novo review, we find that evidence clearly supports termination under § 43-292(2), in that Robert has substantially and continuously or repeatedly neglected and refused to give the Brittney Sue and her siblings necessary parental care and protection.

Several witnesses testified that there were safety concerns with leaving Brittney Sue in Robert's care, noting the presence of loaded firearms, abandoned vehicles, burning trash inside the home, failure to provide medical care, and allowing Brittney Sue and her siblings to remain in a hot car. Workers at Saint Francis also testified about concerns with Robert's continual agitation with support workers. Further, support workers testified that Robert had failed to make progress in IFP and that he told support workers he did not believe his home presented safety concerns. A parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). Therefore, we find clear and convincing evidence that termination was proper under § 43-292(2).

Because there was clear and convincing evidence to support termination of Robert's parental rights under § 43-292(2), we need not address further Robert's arguments under § 43-292(7) or the court's findings under § 43-292(6). See *In re Interest of Elizabeth S.*, 282 Neb. 1015, 809 N.W.2d 495 (2012).

*Best Interests.*

In order to terminate parental rights, a court must find by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that the termination is in the child's best interests. *In re Interest of Alec S., supra.* A child's best interests are presumed to be served by having a relationship with his or her parent. *Id*. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when it has been proven that the parent is unfit. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015).

The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the children's best interests. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.*

Robert has failed to demonstrate that he can properly care for Brittney Sue. His failure to care for his older children resulted in termination of his parental rights to Brittney Sue's siblings, and family support workers testified that he has been unable to make efforts to improve his parenting or progress toward reunification with Brittney Sue.

At the time of the termination hearing, Brittney Sue had been in foster care for 19 out of the most recent 22 months. If Robert's rights were not terminated, Brittney Sue would be required to wait in foster care even longer for Robert to make the necessary changes and demonstrate his ability to parent Brittney Sue, which he has consistently been unable to do in the past. Furthermore, children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Jahon S., supra*. Therefore, we find that the juvenile court did not err in finding that termination was in Brittney Sue's best interests.

*Motion in Limine.*

Robert assigns that the juvenile court erred when it granted the State's motion in limine, eliminating his ability to introduce evidence of the children's blood lead levels and lead witness testimony. Robert argues that the lead evidence would have shown that symptoms leading to the determination of his neglect could have actually been caused by the children's blood lead levels. Robert argues that the denial of this evidence violated his due process rights as he was not afforded a reasonable opportunity to refute or defend against the accusation that he neglected Brittney Sue or failed to correct the conditions leading to her removal.

However, at trial, there was no evidence suggesting Brittney Sue had high blood lead levels and Robert did not suggest this in his offer of proof at the motion in limine hearing. Further, there was no evidence that Brittney Sue exhibited any of the behaviors or symptoms that Robert suggests were caused by high blood lead levels. Therefore, any reference to Brittney Sue's lead levels and how it might affect her was not relevant in this case. We find no error in the juvenile court's grant of the State's motion in limine.

*Written Determination of Findings of Fact.*

During the opening statements at the termination trial, Robert orally moved for a written determination of the facts at the conclusion of the case. Robert assigns that the juvenile court erred when it failed to state in writing the conclusions of fact as requested.

Neb. Rev. Stat. § 25-1127 (Reissue 2016) provides:

> Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its finding, except, generally, for the plaintiff or defendant, unless one of the parties request it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing the conclusions of fact found separately from the conclusions of law.

Here, Robert orally moved for written findings of fact, which the court did not provide. However, the failure by the trial court to separately state findings of fact or conclusions of law under § 25-1127 is not reversible error where the record affirmatively shows that such failure worked no injury to the appellant. *D & R Realty v. Bender*, 230 Neb. 301, 431 N.W.2d 920 (1988). Since a juvenile court's findings are reviewed de novo the failure to make findings cannot be

prejudicial. See *Brooke v. Brooke*, 234 Neb. 968, 453 N.W.2d 438 (1990). Although the court did not make written factual findings in its order, the court made oral factual findings at the conclusion of the trial. Specifically, the court found that the evidence showed that Brittney Sue was out of the home for 15 of the most recent 22 months, that Robert had repeatedly neglected Brittney Sue and her siblings, and that efforts for reunification had failed. The court also found that termination was in Brittney Sue's best interests because, while under Robert's care, she was left in hot vehicles, the termination of Brittney Sue's siblings based on neglect had been affirmed on appeal, and Brittney Sue had spent the majority of her life in foster care and created a bond with her siblings. Further, as stated above, we have reviewed the record de novo and have reached independent conclusions regarding the facts and legal bases supporting the termination of Robert's parental rights. Therefore, we find no reversible error in the juvenile court's failure to include written findings of fact in its order.

## CONCLUSION

For the reasons stated above, we affirm the decision of the juvenile court terminating Robert's parental rights to Brittney Sue.

AFFIRMED.